[No. 36901.   En Banc.   April 16, 1964.]

THE STATE OF WASHINGTON, *Appellant,* v. HUMAN RELATIONS RESEARCH FOUNDATION *et al., Respondents.*\*

\*Reported in 391 P. (2d) 513.

*The Attorney General* and *Edward E. Level, Assistant,* for appellant.

*Kern, Dano & Cone, The Attorney General* and *Charles B. Roe, Jr., Assistant,* for respondents.

*Kermit M. Rudolf,* amicus curiae.

WEAVER, J.—This is an action by the state Department of Highways to condemn for highway purposes 52 acres of irrigable land within the boundaries of the Kittitas Reclamation district. The district, which contains 57,399.5 acres of irrigable land, was organized pursuant to Title 87, RCW. An order adjudicating public use was entered February 5, 1960.

Eleven acres are presently being irrigated; the remaining 41 acres are capable of being served by the facilities of the reclamation district.

Just compensation to be paid the fee owners of the property is to be determined in a separate proceeding. The crux of the instant case is to determine what, if any, compensable interest the reclamation district has in the land under existing state statutes.

This case brings into sharp focus the constitutionality and interpretation of Laws of 1959, chapter 303 (RCW 87.03.810, 87.03.815), set forth in the margin.[1]

---

[1]"Whenever lands situated in an irrigation district are acquired by the state department of highways, and such lands, at the time of their

In short, the statute provides that when the state Department of Highways acquires land in an irrigation district, the department must pay to the district, as distinguished from the individual owners of the land, "with funds available for such acquisition," and as a part of the cost of acquisition, (1) a sum sufficient to pay the land's pro rata share of the district's bonded indebtedness, if any, and its pro rata share of the district's contract indebtedness, if any, to the United States, or to the state; (2) a sum sufficient to pay any deferred installments of local improvement district assessments, if any; and (3) a sum sufficient to produce, if invested, an amount equal to the annual increase in operation and maintenance costs against the lands remaining in the district resulting from the severance from the district of the lands acquired by the state Department of Highways.

acquisition by the state department of highways, were irrigable and were being served or were capable of being served by facilities of the district to the same extent and in the same manner as lands of like character held under private ownership were served, the state department of highways, as part of the cost and expense of the acquisition of rights-of-way and with funds available for such acquisition and at the time of such acquisition, shall make a lump sum payment to the irrigation district in an amount:

"(1) Sufficient to pay the pro rata share of the district's bonded indebtedness, if any, and the pro rata share of the district's contract indebtedness to the United States or to the state of Washington, if any, allocable to such lands, plus interest on said pro rata share in the event said indebtedness is not callable in advance of maturity; and

"(2) further, sufficient to pay any deferred installments of local improvement district assessments against such lands, if any; and

"(3) further, sufficient to produce, if invested at an annual rate of interest equivalent to that set forth in current tables issued by the state insurance commissioner, a sum of money equal to the annual increase in operation and maintenance costs against remaining lands in the district resulting from the severance from the district of the lands thus acquired by the state department of highways. For the purposes of determining the amount of said lump sum payment, the annual maintenance and operation assessment of the district shall be considered to be the average for the ten years, or so many years as the district has assessment experience, if less than ten years, preceding the date of acquisition.

"Upon the making by the state department of highways of the lump sum payment to the district pursuant to section 1 of this act, the district thereupon shall make and enter an order relieving such lands from further district assessments for the delivery of water to said lands."

The clear purpose of the statute is to maintain the economic stability of these districts and to prevent their emasculation by the loss of assessable lands within their boundaries by condemnation since such condemnation would result in increased financial burdens upon the land remaining.[2]

In the instant case, the district has no bonded indebtedness; there are no deferred installments of local improvement district assessments. The pro rata share of the district's contractual indebtedness to the United States chargeable to the 52 irrigable acres is $6,034.86.

It is stipulated that there will be no reduction or increase in the total operation and maintenance costs of the district resulting from the severance of the 52 acres, but there will be an annual increase in operation and maintenance costs *per acre against the remaining lands* because of the loss of contribution from the severed lands.

By its judgment and decree of appropriation, dated September 18, 1962, the trial court awarded to the Kittitas Reclamation District judgment against the state pursuant to Laws of 1959, chapter 303, in the sum of $6,034.86, the pro rata share of the district's contractual indebtedness chargeable to the 52 irrigable acres being condemned, and $928.00, the sum sufficient to produce $32.47 annually, which is the increase in operation and maintenance costs chargeable against the remaining lands in the district.

The state (appellant) presents two interwoven questions:

---

[2]December, 1958, Washington Agricultural Experiment Stations, State College of Washington, published a summary of findings prepared for the Joint Fact-Finding Committee on Highways, Streets and Bridges of the Washington State Legislature, entitled, "The Equitable Obligation When Assessed Irrigation District Lands are Taken for Highway Use." Therein it is stated:

"The ninety irrigation districts in Washington are in only fourteen of the counties, and forty-seven districts have state highways within their boundaries. There are approximately 770 miles of state highway within these boundaries and they occupy about 7,500 acres.

"During the past 10 years, approximately 3,800 acres have been taken from within irrigation district boundaries for state highway use. Much of this area has come from irrigated lands assessed by the irrigation districts."

(1) Does the district have a compensable interest in the lands being taken by this action of eminent domain? (2) Is chapter 303, Laws of 1959 (RCW 87.03.810-815) quoted *supra* (footnote 1) constitutional?

In *In re Horse Heaven Irr. Dist.* 11 Wn. (2d) 218, 227, 118 P. (2d) 972 (1941) this court said:

"An irrigation district is a corporation which exercises no governmental functions. It owns and uses its property in a strictly proprietary capacity for the primary benefit of the owners of land included within the district. With the acquisition as owner of land in an irrigation district, *that owner immediately acquires an interest in all property of that district. . . .*"

The rights acquired by owners of land within the district can be exercised only by the district itself, standing in fact, as a trustee, to accomplish the purpose for which the district was formed. Its right to accomplish its purpose by imposition of assessments arises both by contract and by statute. RCW 87.03.215. If a portion of the lands in the district does not discharge its duty, the remaining lands in the district are required to assume an additional pro tanto burden arising from the nonpayment. *Roberts v. Richland Irr. Dist.*, 169 Wash. 156, 13 P. (2d) 437 (1932).

The state urges that condemnation of the land results in nothing more than a diminution of the statutory taxing power possessed by the district; that the state does not acquire this right; hence, the district has not been deprived of a compensable interest. Of course, when the right to assess cannot be distinguished from the taxing power, the interest lost is noncompensable; but this is not the instant case.

In *Adaman Mut. Water Co. v. United States*, 278 F. (2d) 842 (C.A. 9th 1960), the federal government sought to condemn land within an Arizona private water district.

The court stated the question:

". . . does the diminution of appellant's assessment base constitute the taking of a compensable interest under the Fifth Amendment?"

In giving an affirmative answer, the court said:

"We think that the duty to pay assessments in the instant case is an equitable servitude or restrictive covenant binding upon any once-cultivated segment of Project land serviced by appellant. Appellant has lost the benefit derived from this servitude, and the loss is compensable, for the Government has destroyed an intangible right directly connected with the physical substance of the land condemned."

Further, there is a vast distinction between general taxes and levies for improvement of specific property. See *In re State's Appeal*, 60 Wn. (2d) 380, 374 P. (2d) 171 (1962); *In re Howard Ave. North*, 44 Wash. 62, 86 Pac. 1117 (1906). The fact that the right to levy assessments in the instant case is lodged in a semipublic body makes no difference; the statute simply lends the machinery for tax collection to enforce the inherent duty impressed upon the land by the equitable servitudes and restrictive covenants necessary to accomplish the purposes for which the district was formed. The district is being deprived by condemnation of the right to collect the pro rata share of construction, operation, and maintenance costs against the land involved. It is the deprivation of this right, rather than the accretion of any right to the state, that constitutes the taking.

We conclude, as did the trial court, that the district is being deprived of

" . . . a compensable property right for which the respondent district is entitled to compensation under the provisions of Amendment 9 of the Washington State Constitution."

See: *Columbia Irr. Dist. v. United States,* 268 F. (2d) 128 (CA 9th 1959); *United States v. Florea,* 68 F. Supp. 367 (D.C. Ore. 1945); *United States v. Aho,* 68 F. Supp. 358 (D.C. Ore. 1944).

■ Before discussing the second issue—the constitutionality of chapter 303, Laws of 1959—we turn briefly to the state's contention that the court erred when it admitted in evidence 16 incidents of payments by the Department of Highways for acquisition of rights of way and lands for

highway purposes within the boundaries of the Columbia Basin Irrigation Districts. Generally, these lump sum payments were for the costs of plat revisions, construction and development charges usually represented by bonded or contractual indebtedness, and operation and maintenance costs chargeable against the lands acquired.

We believe these admitted facts were relevant and material because they constitute a recognition by the Highway Department that compensable property rights were taken from the districts; these payments indicate an administration interpretation contrary to the position taken in the instant case. The weight to be given this evidence is to be determined by the trier of the facts. In view of the conclusion we have reached, however, we need not discuss this evidence.

The state contends that Laws of 1959, chapter 303 (RCW 87.03.810-815) (quoted *supra,* footnote 1) is unconstitutional because it transgresses: (1) Art. 2, § 40 (amendment 18); (2) Art. 7, § 1 (amendment 14); (3) Art. 2, § 19 and (4) Art. 2, § 28 (10) of the state constitution.

Since we find no merit in any of its contentions, we state our conclusions, and the reasons therefor, without further extending this opinion. We consider the contentions in the order stated *supra.*

*First*: Art. 2, § 40 (amendment 18), *inter alia,* confines the expenditure of motor vehicle funds to ". . . acquisition of rights-of-way." The state contends that (1) the statute requires expenditure of these funds for "other than property rights" since the district has no rights in private property for which the state must pay compensation; (2) the statute requires payment from the motor vehicle fund for other than highway purposes; and (3) the statute contemplates payment solely from the motor vehicle fund.

Our previous discussion concluding that the district is being deprived of a property right appurtenant to the right of way being acquired by the state, answers the state's first and second contention. The third contention does not square with the facts: the statute authorizes the highway department to acquire the rights of way (with appurte-

nances) "with funds available"; it is not limited to the use of money from the motor vehicle fund.

*Second*: The state contends that the payments required by chapter 303 are taxes upon property of the state, are not uniform, and are thus violative of Art. 7, § 1 (amendment 14) of the constitution. We do not agree.

■ The amounts required to be paid by chapter 303 are neither taxes, nor assessments. They represent the value of a property right owned by the district.

*Third*: The state contends that the title of Laws of 1959, chapter 303, refers only to *condemnation*; that RCW 47.12-.010 authorizes the highway department to acquire rights of way by *gift, purchase*, or condemnation; hence the subject of chapter 303 is not expressed in the title and is violative of Art. 2, § 19 of the constitution.

■ The state is not in a position to urge this argument on appeal since the state did not acquire the land by gift or purchase. A litigant who challenges the constitutionality of a statute must claim infringement of an interest peculiar and personal to himself, as distinguished from a cause of dissatisfaction with the general framework of the statute. *State v. Lundquist,* 60 Wn. (2d) 397, 401, 374 P. (2d) 246 (1962).

*Fourth*: The state contends that chapter 303 violates Art. 2, § 28 (10) of the constitution, which provides:

"§ 28. The legislature is prohibited from enacting any private or special laws in the following cases:

" . . .

"10. Releasing or extinguishing in whole or in part, the indebtedness, liability or other obligation, of any person, or corporation to this state, or to any municipal corporation therein."

■ Chapter 303 is not a "private or special law." It is a general law applicable to all irrigation districts; hence, it does not contravene Art. 2, § 28 (10). *Richland Irr. Dist. v. De Bow,* 149 Wash. 242, 247, 270 Pac. 816 (1928).

The judgment is affirmed.

ALL CONCUR.