[No. 42256.    En Banc.    January 18, 1973.]

THE STATE OF WASHINGTON, *Appellant*, v. HAROLD OMAND SPENCE, *Respondent*.

*David Allen* and *Jan E. Peterson,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *James E. Warme, Deputy,* for respondent.

HALE, C.J.—Defendant was charged in King County Justice Court with unlawfully displaying a flag of the United States upon which he had affixed a design or picture to both surfaces. The justice court, sitting without a jury, found him guilty and sentenced him to 90 days' confinement with 60 days suspended. Defendant appealed to the King County Superior Court where a jury found him guilty. On an agreed statement of facts, he appealed the judgment and sentence of 10 days' confinement, suspended, and a fine of $75, and costs entered on the verdict. The Court of Appeals reversed with one judge dissenting (5 Wn. App. 752, 490 P.2d 1321 (1971)); the state obtained review by appeal to this court under Rule on Appeal II-2, and we reverse the Court of Appeals.

That the flag (exhibit No. 3) upon which defendant had taped a picture or diagram was an actual flag of the United States is clear, so acknowledged by both prosecution and defense and so recognized by this court. It measures about 58 inches long and 35 inches wide. On both faces, defendant had outlined in glossy, black plastic ½-inch tape a large circular diagram about 19½ inches in diameter, inside of which was laid out in the same plastic tape another symbol resembling a trident. The trident consisted of a 19½-inch line of plastic tape forming a vertical diameter and two 10-inch lines running from the approximate center on either side of it to intersect the circumference at a point approximately 6 inches from either side of the diameter. The whole design was set in about 4 inches from the top of

the flag, 9¼ inches from the bottom, and about 6½ inches from either edge. It thus occupied nearly one-half of the entire surface of the flag. Defendant calls it a symbol of peace. He had placed the symbol on both surfaces of the flag and suspended the flag upside down from his apartment window. According to the agreed statement of facts:

The uncontroverted testimony of the state's witnesses, three Seattle police officers, was: they observed a flag with a masking tape peace symbol attached thereto, hanging upside down out of a window at 1006 E. Prospect Street, Seattle, Washington; they entered the main door of the apartment building and were met by the defendant who said, "I suppose you are here about the flag. I didn't know there was anything wrong with it. I will take it down"; the defendant allowed the officers to enter his apartment where the flag was located; the officers arrested the defendant and seized the flag; the defendant co-operated with the police officers.

The state introduced, and the court admitted, the flag with the masking tape peace symbol. (It was identified as Exhibit No. 3). The state rested its case.

The defendant, Mr. Spence, took the stand and testified on his own behalf. The defendant testified that he put a peace symbol on the flag and displayed it to public view as a protest to the invasion of Cambodia, and the killings at Kent State University, both of which had occurred a few days previously. Mr. Spence said his purpose of put-

ting the peace symbol on the flag was to associate the American flag with peace instead of war and violence. He testified that he choose [*sic*] masking tape so that the peace symbol could be removed without damaging the flag. He said that he did not know that placing masking tape on a flag was against the law.

Defendant was not convicted of violating the flag desecration statute. RCW 9.86.030. *See State v. Turner*, 78 Wn.2d 276, 474 P.2d 91 (1970). He was convicted of violating RCW 9.86.020(1) and (2), the alteration or improper use statute, which states:

> No person shall, in any manner, for exhibition or display:
> (1) Place or cause to be placed any word, figure, mark, picture, design, drawing or advertisement of any nature upon any flag, standard, color, ensign or shield of the United States or of this state, or authorized by any law of the United States or of this state; or
> (2) Expose to public view any such flag, standard, color, ensign or shield upon which shall have been printed, painted or otherwise produced, or to which shall have been attached, appended, affixed or annexed any such word, figure, mark, picture, design, drawing or advertisement; . . .

Defendant attacks the constitutionality of RCW 9.86.020(1) on two grounds: (1) that it violates the freedom of speech guarantees of the first amendment to the Constitution of the United States, and article 1, section 5, of the Constitution of the State of Washington, and (2) that the statute is unconstitutionally vague and overbroad when read with RCW 9.86.010, which states:

> The words flag, standard, color, ensign or shield, as used in this chapter, shall include any flag, standard, color, ensign or shield, or copy, picture or representation thereof, made of any substance or represented or produced thereon, and of any size, evidently purporting to be such flag, standard, color, ensign or shield of the United States or of this state, or a copy, picture or representation thereof.

Defendant said that the diagram stood for peace. It depicted his protest against the invasion of Cambodia by

American troops, and the killing of students at Kent State University when a unit of the Ohio National Guard fired upon them during a student demonstration. Both the invasion of Cambodia, an American military action undertaken by United States forces as an operation of the Vietnam war, and the shootings at Kent State had occurred shortly prior to the events of this case. Defendant said that he was unaware that taping the symbol upon and displaying the flag was against the law. He did not contend, however, that he was unaware that the cloth upon which he affixed the symbol was an actual flag of the United States of America.

■ As to his knowledge of the law, that point is readily determined by the long-standing and basic principles upon which our legal system depends, that all sane persons are presumed to know the law and are in law held responsible for their free and voluntary acts and deeds. 21 Am. Jur. 2d *Criminal Law* § 94 (1965).

Defendant first contends that the prosecution failed to supply evidence and the court refused to instruct that an element of the offense charged was criminal or evil intent, and that, therefore, he should have been acquitted because of the state's failure to prove an element of the crime charged. He cites, *inter alia, State v. Turner, supra,* a flag burning and desecration case maintained under RCW 9.86.030. That holding, in our view, does not support defendant's position, but contrarily militates against it, for it is based upon the fundamental distinctions between conduct proscribed as malum prohibitum and conduct malum in se.

■ In *Turner,* the defendant was charged under RCW 9.86.030 (amended in Laws of 1969, 1st Ex. Sess., ch. 110, p. 823), with flag desecration by burning, and we held that intent to desecrate was an element that must be established by the prosecution. Under RCW 9.86.020, however, under which the complaint here is laid, evil intent or design is not an element. A violation is complete when one knowingly places any word, figure, mark, picture, design, drawing or

advertisement upon the flag of the United States, or flies a flag so marked. All that is required to complete the offense is to knowingly perform the prohibited act, and it is immaterial—except for consideration of punishment—whether the act was done with an evil motive or an exalted one. The question of criminal intent or evil purpose, therefore, does not arise in this case for the charge was laid not under the flag desecration statute, which has been held to define an offense malum in se, but rather was brought under the flag alteration or improper use statute (RCW 9.86.020), defining offenses malum prohibitum, and requires no proof of evil or criminal intent or design, but only that the act was voluntarily and knowingly done. *Cf. State v. Turner, supra;* Desecration of the flag of the United States, penalties, 18 U.S.C. § 700 (Supp. 1972).

The object to which defendant affixed the tape symbol was an actual flag of the United States. 4 U.S.C. § 1 (1927). It conformed to the official design prescribed in 4 U.S.C. § 1 (1927), as augmented by executive orders of the President adding additional stars for additional states admitted into the union (4 U.S.C. § 2 (1927)). It was thus a flag of the United States within the protective provision of 4 U.S.C. § 3 (1927), prohibiting the printing, painting, attaching or affixing any word, figure, mark, picture, design, drawing or advertisement upon, or displaying a flag so adorned within the District of Columbia, a statute quite similar in language to that now before us.

Defendant contends that the statute is unconstitutionally overbroad and vague, made so by RCW 9.86.010, which relates to such things as standards, colors, ensigns or shields. Although defendant might profess doubts as to what these latter devices are, there is no doubt but that the statute adequately informed him with reference to the article he used—an actual American flag. The prohibited conduct whereof defendant was charged, we think, was described in the statute and in the complaint in language sufficiently clear and concise as to be comprehended by a person of ordinary understanding.

[A]lmost any word or phrase may be rendered vague and ambiguous by dissection with a semantic scalpel.

Harlan, Justice, concurring in the result in *Cole v. Richardson*, 397 U.S. 238, 240, 25 L. Ed. 2d 275, 90 S. Ct. 1099 (1970); *Cole v. Richardson*, 405 U.S. 676, 683, 31 L. Ed. 2d 593, 92 S. Ct. 1332 (1972). Defendant made no claim whatever that he did not know that the article he suspended from his apartment window was a flag of the United States. Thus, as applied to him, the charge was well laid and the statute constitutionally precise. The conduct whereof he was convicted was clearly prohibited and specifically charged.

That there are ways and means other than those charged by which the statute may be violated does not render it vague and overbroad as to the particular conduct charged if an understanding of the conduct prohibited can be reasonably drawn from the act. In *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 32 L. Ed. 2d 234, 238, 92 S. Ct. 1670, 1674 (1972), defendant argued that the "immunity provided by the New Jersey statute is unconstitutionally vague because it immunizes a witness only against the use and derivative use of 'responsive' answers and evidence."

In holding untenable the contention of vagueness, the court, *inter alia*, said:

This is not the technical construction of "responsive" in the legal evidentiary sense that appellant fears, but rather is a construction cast in terms of ordinary English usage and the good-faith understanding of the average man. The term "responsive" in ordinary English usage has a well-recognized meaning. It is not, as appellant argues, "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally* v. *General Construction Co.*, 269 U. S. 385, 391 (1926).

(Footnotes omitted.)

■ Defendant is in no position to conjure up hypothetical behavior which, while colorably actionable, would ren-

der the statute vague or overbroad when the particular conduct charged is clearly within the statute. One may not urge the unconstitutionality of a statute unless he has been adversely affected by the features of it which he claims are unconstitutional. *State v. Lundquist,* 60 Wn.2d 397, 374 P.2d 246 (1962); *State v. Human Relations Research Foundation,* 64 Wn.2d 262, 391 P.2d 513 (1964).

■ The judicial power to declare a legislative act unconstitutional should not be exercised in hypothetical cases. *United States v. Raines,* 362 U.S. 17, 4 L. Ed. 2d 524, 80 S. Ct. 519 (1960); *State v. Dixon,* 78 Wn.2d 796, 479 P.2d 931 (1971). This principle, we think, finds new support in *Grayned v. Rockford,* 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294, 2298 (1972), which considered an antinoise ordinance from two separate standpoints, (a) vagueness, and (b) overbreadth. That opinion held neither vague nor overbroad an ordinance which said that no person, while on or adjacent to any school grounds or building, "shall willfully make or assist in the making of any noise or diversion which disturbs or tends to disturb the peace or good order of such school session or class thereof."

■ A criminal statute is unconstitutionally vague when it leaves the standard of guilt to the variant views of the different courts and juries which may be called upon to enforce it. *Grayned v. Rockford, supra.* Thus, a statute making it a criminal offense to exact any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries was held unconstitutionally vague because one charged under it would not be informed of the nature and cause of the accusation (*United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 65 L. Ed. 516, 41 S. Ct. 298, 14 A.L.R. 1045 (1921)); but a statute prohibiting the sale of goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor, including as it did the element of predatory intent, was held good. *United States v. National Dairy Prods. Corp.,* 372 U.S. 29, 9 L. Ed. 2d 561, 83 S. Ct. 594 (1963). It is thus the rule that, if the general class of offenses to which a penal statute is directed falls

plainly within its terms and can be made constitutionally definite by a reasonable construction, the statute will not be held unconstitutionally vague even though marginal cases could be conjured up where doubts of constitutionality would arise. *United States v. Spector,* 343 U.S. 169, 96 L. Ed. 863, 72 S. Ct. 591 (1952). Where possible, it is the duty of the courts to give to a statute the construction which sustains its constitutionality, even though it might be susceptible of a different interpretation. *United States v. Rumely,* 345 U.S. 41, 97 L. Ed. 770, 73 S. Ct. 543 (1953); *State v. Dixon, supra,* and cases cited therein. Similarly, an oath required of all Massachusetts public employees not only to uphold and defend the constitutions, but to oppose the overthrow by force, violence, or any illegal or unconstitutional method, was held neither unconstitutionally vague, nor otherwise invalid despite the contention that the word *oppose* could conceivably be construed to demand active combat against those who would overthrow the government by force, violence, or other unconstitutional means. *Cole v. Richardson,* 405 U.S. 676, 31 L. Ed. 2d 593, 92 S. Ct. 1332 (1972).

▐ Defendant also contends that the flag statute under which he was convicted is unconstitutional for overbreadth because it impairs his freedom of speech as guaranteed under the First Amendment. Placing the device on the flag, he says, was symbolic speech. When a statute impairs the right of freedom of speech prima facie, he urges, there is no presumption of its constitutionality, and the state has a heavy burden of sustaining it.

We are unable to sustain such sweeping condemnations of what appears to be a straightforward and precisely declared prohibition of placing either words, figures, marks, designs, drawings or advertisements upon a flag of the United States, or displaying such flag after this has been done to it.[1]

---

[1] We think it inappropriate and fruitless to initiate an analysis of those recent cases which relate to freedom of speech, "fighting words," and public obscenity as inaugurated in *Chaplinsky v. New Hampshire,*

The assertion made here of symbolic speech as a basis for sustaining the claim of unconstitutional vagueness and overbreadth is, we think, as nebulous, vague and overbroad as the statute here applied is narrow and precise. The statute does not purport to inhibit speech of any kind whether actual or symbolic, printed or auditory; it merely says that one cannot use the flag of the United States as the material upon which to print his utterance; he cannot lawfully employ the flag as a billboard, poster, or placard upon which to print his message.

Case authority upon which defendant relies, to sustain his claim of freedom of symbolic speech exercised by attaching signs or symbols upon an actual flag, are inapplicable. *West Virginia State Bd. of Educ. v. Barnette,* 319 U.S. 624, 87 L. Ed. 1628, 63 S. Ct. 1178, 147 A.L.R. 674 (1943), went no farther than to hold that neither children nor their parents could be punished for refusing to salute the flag if they had bona fide religious convictions against doing so. *Stromberg v. California,* 283 U.S. 359, 75 L. Ed. 1117, 51 S. Ct. 532, 73 A.L.R. 1484 (1931), referred to by defendant, merely held that the state could not constitutionally prohibit the display of a red flag as a sign of opposition to the government. It did not involve a flag of the United States, nor any defacement of it. *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969), held that students could not be precluded from wearing black arm bands as a sym-

---

315 U.S. 568, 86 L. Ed. 1031, 62 S. Ct. 766 (1942); *Terminiello v. Chicago,* 337 U.S. 1, 93 L. Ed. 1131, 69 S. Ct. 894 (1949); *Feiner v. New York,* 340 U.S. 315, 95 L. Ed. 295, 71 S. Ct. 303 (1951); *Cox v. Louisiana,* 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453 (1965), culminating in *Cohen v. California,* 403 U.S. 15, 29 L. Ed. 2d 284, 91 S. Ct. 1780 (1971), in which a jacket proclaiming an obvious obscenity against enforcement of the draft laws, was conspicuously worn by the accused while walking through the Los Angeles County Courthouse; the wearing was held protected by the First Amendment despite oft-repeated judicial assertions that public obscenity is not so protected, and since the words did not appear to be directed toward any person but to the conscription laws in general, they could not be held to be "fighting words."

bol of protest against the American participation in the Vietnam war. *Street v. New York,* 394 U.S. 576, 22 L. Ed. 2d 572, 89 S. Ct. 1354 (1969), involved a charge of *desecration* of the flag by words directed against it and the burning of it. It reversed the conviction, as we understand, for the reason that the court could not ascertain from the record whether defendant had been convicted for what he *said* about the flag, or what he *did* to it. There was, moreover, no circumstance there in which it could be said that Street was using so-called "fighting words," or inciting a public disturbance, violence, or riot, or was engaged in conduct which at that time and place would be likely to do so. And finally, *Long Island Vietnam Moratorium Comm. v. Cahn,* 437 F.2d 344 (2d Cir. 1970), cited by defendant, does not concern an actual flag of the United States, but merely a red, white and blue circular design with the asserted peace symbol superimposed upon it.

The issue in this case, then, is not whether the legislature in enacting RCW 9.86.020 has intended to or actually curtailed or impaired the rights of this defendant to speak freely or to communicate his ideas to others, for there is nothing about the statute which would do this. As applied to him, the statute does not bar the defendant from buying, printing, marking, proclaiming, denouncing, carrying, advocating, or displaying upon any kind of material or object he chooses whatever idea he wishes to communicate to others except upon a flag of the United States. Nor does the state contend that he can be required to pay public obeisance to the flag, or compel him to pledge allegiance to it. *See State ex rel. Bolling v. Superior Court,* 16 Wn.2d 373, 133 P.2d 803 (1943), holding that children whose parents were members of Jehovah's Witnesses could not be compelled to pledge allegiance in the public schools. The only interdiction of free speech so far as this case is concerned is that one cannot alter or deface a flag of the United States—and perhaps other official symbols which are not before us—as a medium of communication. The larger issue, therefore, is whether a state—or the United States—can constitutionally

bar the public employment and display of a flag of the United States, the official emblem of the nation, as a backing or as background material, or as a billboard, poster or placard for advertising a cause, philosophy, religion or product. We note that the statute does not bar the carrying of the American flag in connection with other banners, flags, signs, symbols or devices, but only the altering or adorning of it, or a symbol representing it, by placing foreign and extraneous materials, marks or symbols upon it. Thus, whatever impairment might be said to arise from this statute trenching upon the defendant's rights to speak his mind freely and communicate his personal views by sign and symbol is minimal—so miniscule and trifling as to come within the de minimis non curat lex rule. Defendant's freedom of speech and communication is no more impaired by this statute than would his rights to symbolic speech be abridged by an antinoise ordinance prohibiting the use of sound tracks at certain places and hours or the needless sounding of automobile horns and bells—or unnecessary noise next to a school. *Grayned v. Rockford,* 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972).

The nation has a right to adopt a national emblem and the states have a right to protect it. The nation and the state have a constitutional right to declare that the flag of the United States, as a national symbol, is not available to anyone for use as a backing nor may it be altered for purposes of creating a medium for self-advertising, whether that advertising be the dissemination of one's private views on life and things in general, or of a commercial product or service. We think it beyond argument that the nation and state both have a recognizable interest in preserving the flag as a symbol of the nation and in keeping it free of extraneous adornment and alien markings and designs.

The rule contended for by defendant, that his claimed right to affix a conspicuous symbol upon the flag of the United States is an integral component of his freedom of

speech, has grave portent. If this defendant had this right, if the state cannot keep the flag of the United States free of extraneous signs, markings, pictures, designs, drawings and advertisements, then, of course, that right to put them there belongs equally to everyone. Banks and finance companies could, with equal claim of right, proclaim their solvency or the insolvency of business rivals with the dollar sign overprinting the flag; cattlemen with pictures of prize animals; or canneries with facsimiles of canned goods. If defendant's view of the constitution were sound, then nearly everything offered, sold, hawked or delivered could lawfully in one way or another be advertised upon the flag of the United States, and the several states and the United States would be without power to prevent it.

And that is not the end of it: There is the realm of political, social, religious and philosophical ideas. If defendant cannot be constitutionally barred by law from affixing and displaying what he describes as a peace symbol upon the flag of the United States, neither can he be constitutionally prevented from proclaiming the Ku-Klux Klan upon it, nor the swastika, nor the hammer and sickle, either in advocacy of the Ku-Klux Klan, or Nazism, or Communism, or in opposition to these movements. Nor could he be stopped from utilizing the flag as a medium of display for whatever religious signs or symbols of whatever religion, new or old, he might espouse or detest. In short, if the defendant were right, the state and the United States could not lawfully prevent the flag from being actually employed as a billboard, placard, or backing for advertising proclaiming anything and everything imaginable.

We think the state can constitutionally keep the flag free of extraneous symbols, pictures and signs. There are thousands of other means available to the defendant for the dissemination of his personal views, and depriving him of the flag of the United States as one of them does not in our opinion measurably impair his freedom of speech.

The constitutionality of a similar flag statute, as it applied to the picture of a flag printed on a bottle of beer, was

questioned in *Halter v. Nebraska,* 205 U.S. 34, 51 L. Ed. 696, 27 S. Ct. 419 (1907). There the statute prohibited the placing of or the exhibition or display of any flag of the United States upon which had been placed any word, figure, mark, picture, design, drawing or advertisement and punished violations as a misdemeanor. In sustaining the constitutionality of the Nebraska flag statute, the court said:

> And we cannot hold that any privilege of American citizenship or that any right of personal liberty is violated by a state enactment forbidding the flag to be used as an advertisement on a bottle of beer. It is familiar law that even the privileges of citizenship and the rights inhering in personal liberty are subject, in their enjoyment, to such reasonable restraints as may be required for the general good.

and, further,

> It would be going very far to say that the statute in question had no reasonable connection with the common good and was not promotive of the peace, order and well-being of the people. Before this court can hold the statute void it must say that and, in addition, adjudge that it violates rights secured by the Constitution of the United States. We cannot so say and cannot so adjudge.

Accordingly, the Court of Appeals is reversed and the cause remanded to the King County Superior Court for reinstatement of the judgment and sentence.

ROSELLINI, HUNTER, and WRIGHT, JJ., and COCHRAN, J. Pro Tem., concur.

STAFFORD, J. (concurring in the result only)—I concur in the result reached by the majority. I cannot, however, agree with the manner in which the majority has dealt with the problem of overbreadth in the area of the first amendment to the United States Constitution. The cases cited in support of the majority's position are not, for the most part, first amendment cases. Using non-first amendment cases to support a first amendment issue undermines

the majority rationale. For this reason I concur in the result only.

HAMILTON, J., concurs with STAFFORD, J.

FINLEY, J. (dissenting)—On May 10, 1970, thousands of young Americans felt moved to protest the United States' invasion of Cambodia and the killings at Kent State University which had occurred a few days previously. The young man before this court joined in this expression of dissatisfaction by displaying an American flag (his own personal property) from a window of his apartment. The flag was displayed in an upside-down position. A reasonable facsimile of the symbol of peace, currently well-recognized as such by most young people and also by many older people, had been superimposed on the flag by the use of adhesive black electrical tape. This same peace symbol is worn as a medallion: It is embroidered or otherwise made a part of various parts of the wearing apparel of many young people, ranging from college down to high school and grammar grades. *This, as I view the circumstances, is the factual picture which emerges from this case. It is obviously significantly different from what arises from the majority's interpretation and extrapolation of the evidence.* It seems to me that this is, in essence, a case of a perhaps over-exuberant youthful advocate for peace and for ending the war in Vietnam.

His was an advocacy with which most people now rather wholeheartedly and well-nigh unanimously agree. The President of the United States and his recent political opponent for the presidency apparently agreed upon this, if nothing else. Even a majority of Congress—despite political party affiliations—I daresay are in substantial agreement. The only area of disagreement is in terms of the time and manner of ending the war and restoring peace in our time. The young man's action in displaying the flag adorned with the peace symbol in the manner indicated above might be regarded as an example of an idealistic and courageous appeal for world peace. However, he has apparently of-

fended the sensitivities of certain more sedate citizens. In any event, *that any pernicious or baleful thing was contemplated or any evil intent actually involved is not substantiated by the evidence in this case.* And here, in essence, hangs the tale of my very respectful but nevertheless firm and substantial disagreement with the majority in this case. In other words, (a) there is, in ancient criminal law parlance, no proof of mens rea, *i.e.*, evil intent, and (b) proof of intent is, in my judgment, an essential element of the crime provided by RCW 9.86.020. Thus, as this court held in the opinion written by Hale, J., in *State v. Turner*, 78 Wn.2d 276, 474 P.2d 91 (1970), the prosecution failed to prove a necessary element of the crime charged and the case simply should be dismissed on this basic and traditional ground.

It should be rather obvious that the majority's much sterner view, in construing and applying the facts of this case, leads not only to an oversimplified application of legal principles and rules, but to a grossly erroneous result. One consequence of the majority's approach, in addition to the failure to recognize the requirement that evil intent be proved, is that any objective consideration of First Amendment freedom of speech rights and concepts is brusquely swept aside, apparently simply to sustain conviction of the hapless young defendant. Contrariwise, the majority opinion of the Court of Appeals, in my best judgment, objectively construes the facts of this case, and reaches a better-reasoned, more rational disposition of this matter. In this connection, I intend to emphasize certain important considerations dealt with at considerable length in the majority opinion of the Court of Appeals by Horowitz, J., and to more fully discuss the requirement of the pertinent statute that evil intent must be proved.

The Court of Appeals objectively observed that a flag may be considered from two points of view: "(1) as a physical object, and (2) as a symbol of ideas." *State v. Spence*, 5 Wn. App. 752, 756, 490 P.2d 1321 (1971). In short, the view quite generally held is that "the American flag is an indentifying, history-preserving and ideological sym-

bol." 5 Wn. App. at 757. Indeed, the majority opinion itself contains more than one reference to the United States flag as a "symbol".

A symbol by its very being is expressive; so to display the American flag, if not pure expression or articulation, is certainly a traditionally recognized and effective form of communication. *See* Note, 30 Md. L. Rev. 332, 346 (1970). This conclusion is borne out by the determination of the United States Supreme Court in *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632, 87 L. Ed. 1628, 63 S. Ct. 1178 (1943) that "[s]ymbolism is a primitive but effective way of communicating ideas. The use of an emblem or flag to symbolize some system, idea, institution, or personality, is a short cut from mind to mind." Indeed, the well-recognized symbol of peace, which was here attached to the American flag, is equally a form of expression when displayed. The symbolic speech which is expressed by the display of such symbols is protected by the first amendment to the United States Constitution. *Police Dep't v. Mosley*, 408 U.S. 92, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972) (picket signs); *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733 (1969) (black armbands); *Stromberg v. California*, 283 U.S. 359, 75 L. Ed. 1117, 51 S. Ct. 532, 73 A.L.R. 1484 (1931) (display of a red flag). *See* Note, 69 Colum. L. Rev. 1091 (1968). Consequently, one of the significant issues clearly before this court is whether the immediate statutory prohibition against affixing any design upon the flag is to take precedence over the defendant's invocation of the First Amendment protection of symbolic speech. *The majority either myopically or arbitrarily brush this issue under the rug.* The Court of Appeals did not duck the issue, but, in my judgment, evaluated it properly and determined that "a statute may protect the flag *if so to do protects the safety of the state against a clear and present danger.*" (Italics mine.) *State v. Spence, supra* at 759. In other words, the Court of Appeals held that no "clear and present danger"

existed to support the statute and its application in the instant case. 5 Wn. App. at 759. *See Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 86 L. Ed. 1031, 62 S. Ct. 766 (1942); *Schenck v. United States,* 249 U.S. 47, 63 L. Ed. 470, 39 S. Ct. 247 (1919); *State ex rel. Holcomb v. Armstrong,* 39 Wn.2d 860, 239 P.2d 545 (1952). In this regard, the Court of Appeals also determined that, where the demands of free speech seem to conflict with a protection of legitimate governmental interests, *such competing interests must be evaluated and balanced against each other* in order to determine whether the speech sought to be exercised will be constitutionally protected. *See United States v. O'Brien,* 391 U.S. 367, 20 L. Ed. 2d 672, 88 S. Ct. 1673 (1968). But, in this regard, the majority herein rather too simplistically and also arbitrarily state that they think it is "beyond argument" that the nation and state have a "recognizable interest" in keeping the flag free of "extraneous adornment". *This is not the law as is clearly shown by the cases cited above, and certainly does not address the issue before us.* The mistaken and perhaps somewhat result-oriented conclusions of the majority seem to me to fall far short of appropriate judicial treatment and resolution of the indicated very real constitutional question presented by this case. Furthermore, by adopting this incomplete approach to the serious question regarding the extent of the competing interest in protecting freedom of speech, the majority actually completely ignores the requirement established by the United States Supreme Court that these conflicting interests be resolved by a *careful balancing* procedure. As stated by the court in *Thomas v. Collins,* 323 U.S. 516, 529-30, 531-32, 89 L. Ed. 430, 65 S. Ct. 315 (1945), substantial weight must be given First Amendment freedoms in applying this required balancing test:

The case confronts us again *with the duty our system places on this Court to say where the individual's freedom ends and the State's power begins.* Choice on that border, now as always delicate, is perhaps more so where the usual presumption supporting legislation is balanced

by the preferred place given in our scheme to the great, the indispensable democratic freedoms secured by the First Amendment. . . .

. . .

. . . [I]n our system where the line can constitutionally be placed presents a question this Court cannot escape answering independently, whatever the legislative judgment, in the light of our constitutional tradition. *Schneider* v. *State,* 308 U.S. 147, 161. And the answer, under that tradition, can be affirmative, to support an intrusion upon this domain, *only if grave and impending public danger requires this.*

(Italics mine.) As to what constitutes legitimate means of securing governmental interests in competition with the First Amendment freedoms, the United States Supreme Court has recently stated:

The nature of a place, "the pattern of its normal activities, dictate the kinds of regulations of time, place, and manner that are reasonable." Although a silent vigil may not unduly interfere with a public library, *Brown* v. *Louisiana,* 383 U. S. 131 (1966), making a speech in the reading room almost certainly would. That same speech should be perfectly appropriate in a park. The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. Our cases make clear that *in assessing the reasonableness of a regulation, we must weigh heavily the fact that communication is involved;*
. . .

(Citations omitted. Italics mine.) *Grayned v. Rockford,* 408 U.S. 104, 116, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972). In applying the balancing test required, it is my judgment that the Court of Appeals correctly determined that the passive means of communication utilized by the defendant in this case, under the particular circumstances involved, certainly constituted no "clear and present" or "grave and impending danger", and, on balance, outweighed the interest of the state—no matter how "recognizable"—in keeping the flag free of "extraneous adornment". As in *Police Dep't v. Mosley, supra,* the defendant's silent vigil was a peaceful

means of communication, not prone to violence, and therefore is protected by the First Amendment. Additionally, as noted by the Court of Appeals, where the United States Supreme Court has held that words critical or contemptuous of the flag are protected by the First Amendment, certainly the attachment of a symbol to the flag—an innocuous act containing no disrespect for the flag—constitutes a protected form of speech, and is to be accorded greater weight than the competing interest of the state in this matter. *See Street v. New York,* 394 U.S. 576, 22 L. Ed. 2d 572, 89 S. Ct. 1354 (1969).

The majority states as its reason for ruling that the defendant's means of expression should not receive the protection of the First Amendment that "whatever impairment might be said to arise from this statute trenching upon the defendant's rights to speak his mind freely and communicate his personal views by sign and symbol is minimal" that "there are thousands of other means available to the defendant for the dissemination of his personal views." It is historically undeniable that this type of reactionary, if not personally biased reasoning was the very sort that has led to and perpetuated unconstitutional deprivations of fundamental liberties in the past. In *Plessy v. Ferguson,* 163 U.S. 537, 41 L. Ed. 256, 16 S. Ct. 1138 (1896), the United States Supreme Court noted that the statute being contested there provided for equal accommodations for blacks and whites in railway coaches, and ruled essentially that, since blacks had other adequate seats on the train, no need existed to allow them to occupy seats reserved for whites. This "other means available" logic of the "separate but equal" doctrine began to crumble in *Sweatt v. Painter,* 339 U.S. 629, 94 L. Ed. 1114, 70 S. Ct. 848 (1950), and was finally held by the Supreme Court to afford an unconstitutional treatment of blacks in *Brown v. Board of Educ.,* 347 U.S. 483, 98 L. Ed. 873, 74 S. Ct. 686, 38 A.L.R.2d 1180 (1954). In ruling as it did, the court explicitly rejected the reasoning which the majority in this case advances in support of its conclusion. The fact that there may well be "other means available" is

certainly no basis for depriving one of fundamental liberties, whether such freedom takes the form of choosing to sit in any seat in a train, or expressing personal views through the combined display of chosen symbols. In view of the United States Constitution's powerful protection of the freedom to speak one's mind, and almost innumerable decisions of the United States Supreme Court to this effect, it seems not only highly irregular and unnecessary but arbitrary and oppressive for the majority to hold otherwise in this case. I am therefore in agreement with the holding of the Court of Appeals that RCW 9.86.020, the improper display statute, as interpreted by the majority and applied in this case constitutes an unconstitutional abridgment of free speech.

The majority, as indicated above, also suggests that proof of evil intent is not required in a prosecution under the immediate statute (RCW 9.86.020). I cannot agree. Although the conviction of the defendant should be reversed upon the basis that the statute violates the defendant's constitutionally-protected freedom of speech, I am firmly convinced that the trial court erred in refusing to instruct the jury that evil intent is an essential element of the offense charged. If proof of evil intent were not required, then the Court of Appeals correctly concluded that the patriotic editions of two Seattle newspapers (Seattle Post-Intelligencer, July 4, 1970, at 1, and Seattle Times, June 14, 1970 § A, at 1), in displaying a picture of the American flag with words and pictures over it, would be equally susceptible to criminal charges, since RCW 9.86.020 applies both to an actual flag and to a representation of the flag. RCW 9.86.010. Certainly I cannot distinguish, and I submit the majority herein cannot distinguish the defendant's actions from the pictures in the two publications simply because the patriotic message or communication of the newspapers seems to be a more preferable instance of the exercise of freedom of speech:

But, above all else, the First Amendment means that government has no power to restrict expression because

of its message, its ideas, its subject matter, or its content. *Cohen* v. *California,* 403 U. S. 15, 24 (1971); *Street* v. *New York,* 394 U. S. 576 (1969); *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 269-270 (1964), and cases cited; *NAACP* v. *Button,* 371 U. S. 415, 445 (1963); *Wood* v. *Georgia,* 370 U. S. 375, 388-389 (1962); *Terminiello* v. *Chicago,* 337 U. S. 1, 4 (1949); *De Jonge v. Oregon,* 299 U.S. 353, 365 (1937).

*Police Dep't v. Mosley,* 408 U.S. 92, 95, 33 L. Ed. 2d 212, 92 S. Ct. 2286 (1972). Indeed, such a distinction need not be made. Neither the publications of the newspapers nor the conduct of the defendant herein appear to have contained the element of evil intent which is necessarily required under RCW 9.86.020. We stated in *State v. Turner,* 78 Wn.2d 276, 282, 474 P.2d 91 (1970), in determining whether the flag desecration statute (RCW 9.86.030) required proof of intent for conviction, that if such proof of evil design or purpose were not necessary, "the legislature could readily have said otherwise." It is therefore significant here that the legislature has also been silent regarding the element of intent in the crime of improper display of the flag (RCW 9.86.020). Certainly proof of evil intent must be necessary here as well. This conclusion is further supported by the very pertinent, applicable, and decisively phrased language of Justice Hale in setting forth the holding of the court in *State v. Turner, supra* at 283:

> Accordingly, unless the statute expressly eliminates the element of intent or design or defines the kinds of offenses which, by their very nature, are classified judicially as mala prohibita, the ingredients of intent, design and purpose *should be deemed indispensable* to a proof of guilt.

(Italics mine.) Actually, the reasoning of the court and the decision in *Turner* are absolutely inconsistent with the reasoning and result reached by the majority in the instant case. Furthermore, try as I may, I can find no reasonably convincing justification for the inconsistency. In the instant case, the jury should have been instructed and should have considered and decided whether evil intent was present in

the alleged violation of RCW 9.86.020, *i.e.*, whether the defendant intended, for example, to provoke a public disturbance, disorder, breach of the peace, or a riot. The task for the jury in determining the subjective intent of the defendant, is facilitated by such objective manifestations as the character of the design upon the flag, the manner of display, the circumstances of time and place, and the activities which accompanied such display. Unless the element of evil intent be proved *beyond a reasonable doubt,* no conviction under RCW 9.86.020 can be sustained.

Finally, in rejecting the defendant's overbreadth argument, the majority has confused and misapplied the distinct constitutional doctrines of "vagueness" and "overbreadth". This distinction was most recently recognized by this court in *State v. Oyen,* 78 Wn.2d 909, 480 P.2d 766 (1971). "Vagueness" is found where the legislation fails to provide fair notice to the public of that which is being prohibited by the law. *Papachristou v. Jacksonville,* 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972); *Keyishian v. Board of Regents,* 385 U.S. 589, 17 L. Ed. 2d 629, 87 S. Ct. 675 (1967); *Edwards v. South Carolina,* 372 U.S. 229, 9 L. Ed. 2d 697, 83 S. Ct. 680 (1962); *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522 (1967). It is an element of due process which demands precision in penal legislation. *NAACP v. Button,* 371 U.S. 415, 9 L. Ed. 2d 405, 83 S. Ct. 328 (1963). On the other hand, the "overbreadth" doctrine applies where the penal legislation prohibits not only unprotected behavior, but embraces within its scope some constitutionally protected activity, even though the language of the statute may be sufficiently precise as not to be deemed "vague". *United States v. Robel,* 389 U.S. 258, 19 L. Ed. 2d 508, 88 S. Ct. 419 (1967); *Freedman v. Maryland,* 380 U.S. 51, 13 L. Ed. 2d 649, 85 S. Ct. 734 (1965); *Aptheker v. Secretary of State,* 378 U.S. 500, 12 L. Ed. 2d 992, 84 S. Ct. 1659 (1964); *Shelton v. Tucker,* 364 U.S. 479, 5 L. Ed. 2d 231, 81 S. Ct. 247 (1960); *Adams v. Hinkle,* 51 Wn.2d 763, 322 P.2d 844 (1958). In some cases the legislation may suffer from both infirmities by containing imprecise language (vagueness)

and by prohibiting a constitutionally protected activity (overbreadth). *See Cox v. Louisiana,* 379 U.S. 536, 13 L. Ed. 2d 471, 85 S. Ct. 453 (1964); *Winters v. New York,* 333 U.S. 507, 92 L. Ed. 840, 68 S. Ct. 665 (1948); *Seattle v. Drew, supra.*

Because of the majority's confusion of these two doctrines, it repeatedly rejects the defendant's overbreadth argument by asserting that RCW 9.86.020 is sufficiently precise (and therefore not *vague*) as applied to the defendant. In ruling upon this basis that the defendant may not raise the overbreadth issue in this case, the majority opinion states:

> Defendant is in no position to conjure up hypothetical behavior which, while colorably actionable, would render the statute vague or overbroad when the particular conduct charged is clearly within the statute. One may not urge the unconstitutionality of a statute unless he has been adversely affected by the features of it which he claims are unconstitutional.

In support of this pronouncement the majority cites authority which involved *neither the overbreadth doctrine nor the First Amendment, but rather which dealt with problems of "standing" under circumstances which are irrelevant to the immediate issue.* In addition, the above statement of the majority, made in the context of a First Amendment case in which overbreadth of a statute is asserted, simply and directly contradicts the settled law of the land. In *NAACP v. Button, supra* at 432-33, the United States Supreme Court ruled as follows:

> [I]n appraising a statute's inhibitory effect upon such rights, this Court has not hesitated to take into account possible applications of the statute in other factual contexts besides that at bar. *Thornhill* v. *Alabama,* 310 U. S. 88, 97-98; *Winters* v. *New York, supra,* at 518-520. Cf. *Staub* v. *City of Baxley,* 355 U. S. 313. . . . The objectionable quality of vagueness and overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal stat-

ute susceptible of sweeping and improper application. Cf. *Marcus* v. *Search Warrant,* 367 U. S. 717, 733. These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions.

(Footnote omitted.) *Accord, Aptheker v. Secretary of State, supra.* It is our duty, therefore, to consider that which *may* be proscribed by the statute, not simply the application of the statute to the facts of the case before us. The majority's use of non-First Amendment *vagueness* cases to rebut the defendant's First Amendment *overbreadth* challenge is both in error and improper. The "chilling effect" upon the exercise of protected freedoms of expression is the evil which the overbreadth doctrine strives to eradicate. *Dombrowski v. Pfister,* 380 U.S. 479, 14 L. Ed. 2d 22, 85 S. Ct. 1116 (1965). The proper application of the doctrine in the case before us would provide a review of the statute under all possible circumstances, thereby insuring that the exercise of protected rights will not be deterred for either the defendant or the remainder of the public.

In this same area of overbreadth, the majority also rejects the defendant's challenge on the basis that "it is the duty of the courts to give to a statute the construction which sustains its constitutionality." *The error of this conclusion is evident from our own past decisions.* In *Adams v. Hinkle, supra* at 769, we held that "there is no presumption of constitutionality of statutes abridging those rights [of freedom of speech or press]." *Accord, Burstyn, Inc. v. Wilson,* 343 U.S. 495, 96 L. Ed. 1098, 72 S. Ct. 777 (1952). Thus the majority has again cited inappropriate authority for an erroneous conclusion with the unfortunate result that the challenge of the defendant has indeed fallen upon deaf ears.

*Since the rulings of both the United States and Washington Supreme Courts require that we examine the merits of the immediate challenge of this statute's overbreadth, and*

*that we do so without affording the statute any presump-*
*tion of constitutionality, it is evident that the majority's*
*sweeping and mistaken generalities have produced a cu-*
*rious anomaly in the constitutional law of this state.* The
fact that an "actual flag" was used in the instant case seems
quite irrelevant since RCW 9.86.020 does not restrict its
prohibition against affixing designs to an "actual flag". In-
deed, the term "flag", as used in the immediate penal stat-
ute, is defined in RCW 9.86.010 as follows:

> The words flag, standard, color, ensign or shield, as used
> in this chapter, shall include any flag, standard, color,
> ensign or shield, *or copy, picture or representation*
> *thereof, made of any substance or represented or pro-*
> *duced thereon, and of any size, evidently purporting to*
> *be such flag,* standard, color, ensign or shield of the
> United States or of this state, *or a copy, picture or repre-*
> *sentation thereof.*

(Italics mine.) With this statutory definition in mind, the
issue is whether the state has a compelling and overriding
interest in prohibiting the public from affixing a design to a
"picture or representation" of the flag, "made of any sub-
stance . . . evidently purporting to be . . . a copy,
picture or representation" of the flag. Not only does RCW
9.86.020 require punishment for the two newspaper publi-
cations referred to earlier, it would equally demand punish-
ment for a grammar school child's drawing of the flag
which contained any patriotic slogan or other extraneous
marking thereon. Thus, regardless of any personal feelings
concerning the activities of the defendant before this court,
it is evident that this statute goes too far. Its "chilling
effect" is far-reaching. In proscribing innocent activities,
the statute is overbroad, and in this respect is constitution-
ally inappropriate. Under these circumstances, I can find no
solace in inapplicable case authority for the majority's
proposition that this court may excuse one form of statu-
torily-prohibited conduct in *State v. Turner,* 78 Wn.2d 276,
474 P.2d 91 (1970) and cavalierly condemn another as in
the instant case. Since RCW 9.86.020 proscribes constitu-

tionally protected conduct as to which no compelling state interest has been demonstrated, the statute is overbroad on its face and therefore unconstitutional.

For the reasons stated, I would affirm the decision of the Court of Appeals to reverse the conviction of the defendant in this case.

Petition for rehearing denied March 13, 1973.