[No. 24300. Department Two. August 22, 1933.]

THE STATE OF WASHINGTON, *Respondent*, v. HELEN HARLOWE, *Appellant*.[1]

*Henry Clay Agnew*, for appellant.

*Chas. W. Greenough* and *Louis F. Bunge*, for respondent.

STEINERT, J.—In a complaint filed in a justice court of Spokane county, the defendant was charged with being a vagrant. On conviction, she appealed to the superior court, where, in a trial before a jury, she was

[1]Reported in 24 P. (2d) 601.

found guilty. She now appeals from the judgment on the verdict.

The state's evidence was based almost entirely on the testimony of certain police officers, who testified to the following effect: On February 25, 1931, between three and four o'clock in the afternoon, a number of the officers, who had stationed themselves at or near a certain street intersection in the city of Spokane, observed a Chevrolet car, containing a man and a woman, drive up in front of a blacksmith shop near by. The man left the car, entered the blacksmith shop, and in a few minutes returned carrying a triangular piece of iron, which is commonly used by professional safe-crackers for the purpose of removing combinations from safes.

As the man re-entered the car, the officers placed both of its occupants under arrest and took them to the police station. Upon being questioned, the woman, the appellant here, at first said that her name was Helen Harlowe and that the man with her was her husband, but she could give no satisfactory explanation as to when or where they were married. Later on, in the course of the questioning, she admitted, according to the testimony of the officers, that she was not married to the man, but had lived with him in Spokane "at a hotel and at different places." She also admitted that the man's real name was Arniston (as the name appears in the statement of facts), but she would not give her own true name. She was thereupon charged with being a vagrant.

Later, appellant's companion was identified as James Arniston, who had been previously convicted as a burglar. At the trial before the justice of the peace, appellant again admitted that she had lived with Arniston in Spokane and at other places. The state also introduced in evidence a certain hotel register

showing that "Mr. and Mrs. Harlowe" were registered there on February 19, 1931.

Upon the completion of the state's evidence, the appellant raised no question as to its sufficiency to take the case to the jury, but proceeded with her own evidence, consisting only of her testimony. She testified that she had met Arniston just three days before her arrest, which would be about February 22, 1931, at a restaurant which she conducted in Seattle; that she had formed an acquaintance with him at about three o'clock in the afternoon, and that he had remained with her constantly until midnight of the same day; that they then left Seattle in the Chevrolet car and drove to Spokane, but she could not remember the route over which they came, or the names of any towns through which they had passed, nor could she remember whether there was any snow along Snoqualmie pass, which lies between Seattle and Spokane. ·

She further testified that, on arriving in Spokane the next morning, Arniston took her to the apartment of one of her girl friends, where she, the appellant, stayed alone, Arniston taking a room elsewhere. The girl friend, however, it appears, was away at the time, and Arniston, who, by coincidence, also knew the girl, let the appellant into the apartment with a key which he had brought with him. During the next two days, according to her story, Arniston met her at various times and took her out to her meals. Then, as she testified, she went with him, on the day of the arrest, for a drive in the Chevrolet car, but she denied that she knew anything at that time about the triangular piece of iron that was obtained at the blacksmith shop, or anything about its purpose or use. She further denied that she had ever lived, or occupied a room, with Arniston. At the time of first meeting Arniston, the appellant was a divorced woman. Between the time

of trial in the justice court and the trial in the superior court, she had married him, and testified at the latter trial that she still loved him and intended to remain with him.

At the close of all the evidence, appellant moved that the jury be discharged on the ground that the evidence was insufficient to take the case to the jury. That motion was denied.

Rem. Rev. Stat., § 2688, contains fourteen subdivisions covering the subject of vagrancy. Under subdivision 7, vagrants are defined as "lewd, disorderly or dissolute persons".

■ Appellant first assigns as error the admission of evidence regarding Arniston's character and the acquisition of the burglar tool.

Under the evidence introduced by the state, the appellant was roaming the country, and living, with a man who was not her husband. That was sufficient to support the charge of being a lewd person. Her consort was a man of disreputable character. Her knowledge of his character and of his mode of gaining a livelihood was a question of fact. The circumstances surrounding the venture, together with her own unsatisfactory explanation of it, were therefore factors to be taken into consideration in determining whether she had such knowledge. One who knowingly associates with an outlaw, or with a person of disreputable character, under such circumstances as were detailed to the jury in the instant case, and which the jury was entitled to believe, is certainly a dissolute person.

As to the burglar tool, it was competent for the state to show the conditions under which the arrest was made. Though appellant denied having any part in the acquisition of the burglar tool, or any previous knowledge concerning it or its intended use, her knowl-

edge was nevertheless a question of fact under all the circumstances of the case.

██ Two other assignments of error are relied on by appellant, and are argued in the briefs as one. They are: (1) the court's refusal to take the case from the jury, and (2) the giving of instruction No. 4, which reads:

"You are instructed that the laws of the state of Washington define the crime of vagrancy, so far as material to this case, as follows: 'Every person who is a lewd, disorderly, or dissolute person is a vagrant.'

"You are instructed that the term 'lewd person' is defined as being lawless, bad, vicious, unchaste. The term 'dissolute,' as a person who is loose in morals and conduct, profligate and wanton. You are further instructed that the term 'disorderly' embraces all persons who violate the peace and good order of society."

At common law, vagrancy was defined as the wandering or going about from place to place by an idle person who has no lawful, visible means of support and who subsists on charity and does not work for a living, though able to do so. But both in England and in this country, the common-law definition has become largely unimportant by reason of particular statutes on the subject.

"It cannot be doubted that it is within the power of a legislature to define, subject to certain broad limitations, who may be a vagrant and to prescribe punishment for those who shall come within the meaning of that definition." 8 R. C. L., p. 340, § 370.

See, also, 3 Brill, Cyc. Criminal Law, § 1338.

██ Appellant's contention is that subdivision 7 of the statute referred to is null and void, because it is so vague and uncertain that a defendant charged in the words of the statute can not know what the accusation against him is. Her particular criticism is

that the statute is not leveled against any *act* but merely against a *state of being.*

The complaint in this case was drawn in the language of the statute. If one is charged in the language adopted by the statute, that is ordinarily sufficient. If occasion should warrant a further particularization of the complaint, there are adequate means at one's disposal, by proper motion. Appellant made no motion concerning, nor sought any further particularization of, the charge on which she was prosecuted.

The contention made by appellant was asserted in *In re McCue,* 7 Cal. App. 765, 96 Pac. 110, and, because of the able discussion of the question by that court, we quote from the opinion as expressive of our own view:

"Petitioner is serving a sentence imposed on account of a violation of subdivision 5, section 647, Penal Code. This subdivision provides: 'Every idle or lewd or dissolute person, or associate of known thieves, . . . is a vagrant.' It is insisted that this subdivision is void, in that the constituent elements entering into the crime are not defined, and as a consequence one charged thereunder is subject to the arbitrary meaning given by the court to the words employed; that it denounces a penalty against one who is either idle, lewd or dissolute without reference to the circumstances or conditions or acts of such person, or their effect as injuriously affecting the public health or morals. We are inclined to the view that while idleness, whether it be that of the 'idle rich' or 'idle poor,' is a prolific source of crime, still it is not competent for the legislature to denounce mere inaction as a crime without some qualification. But this cannot be said of lewdness or dissoluteness—terms often used interchangeably but each of which applies to the unlawful indulgence of lust, whether in public or private. 'Any practice the tendency of which, as shown by experience, is to weaken or corrupt the morals of those who follow it, . . . is a legitimate subject for regulation or prohibition by the state, . . . and unless

it clearly appears that a statute enacted for this purpose has no real or substantial relation to these objects, and that the fundamental rights of the citizen are assailed under the guise of a police regulation, the action of the legislative department is conclusive.' *(Ex parte Tuttle,* 91 Cal. 590, (27 Pac. 934).) The elements of lewdness and dissoluteness, under the accepted definition of those terms, come directly within the inhibited practices and are proper subjects of regulation and prohibition. The statute, then, is a valid exercise of police power as to these elements, and it is within the power of the court to determine whether one charged comes within the class of lewd or dissolute persons. *(Ex parte Ah Fook,* 49 Cal. 404.) The constitutional right of due process of law will not be given such effect as will render impossible laws which are generally admitted to be essential to the safety and well-being of society. *(Lent v. Tillson,* 72 Cal. 425, (14 Pac. 71).) One charged, as was petitioner, with being an idle, lewd and dissolute person is sufficiently advised of the character of his offense. To say that the legislature must specify the many evil and corrupt practices which might constitute one a lewd or dissolute person would often render the enforcement of a police regulation in connection therewith impossible, and this without considering the indelicacy and impropriety of expression which would often be necessary.''

Society recognizes that vagrancy is a parasitic disease which, if allowed to spread, will sap the life of that upon which it feeds. To prevent the spread of the disease, the carrier must be reached. In order to discourage and, if possible, to eradicate vagrancy, our legislature has enacted a statute defining vagrant persons and penalizing them according to its terms. Other legislatures have pursued the same course. We see no reason why this can not, or should not, be done as a valid exercise of the police power.

It is no doubt true that, under the common law and under many provisions of various state statutes per-

taining to vagrancy, a single act is not sufficient to constitute one a vagrant. On the other hand, under other provisions of the same statutes, a single act is sufficient. Each case must therefore depend upon the particular provision of the statute. It is also true that a single act, in some instances, may be only sporadic and may carry no import of profligacy or depravity. In other instances, however, the act may be the index of a chronic condition. The distinction is very lucidly pointed out in *People v. Scott,* 113 Cal. App. 778, 296 Pac. 601, wherein the defendants were convicted of vagrancy, as being dissolute persons. We quote from the opinion:

"Conceding that vagrancy is chronic rather than acute, as stated in *People v. Craig, supra,* [152 Cal. 42, 91 Pac. 997] yet we think the existence of such a chronic condition may be ascertained from a single examination, if the characteristic reactions of that condition be found present. There are many acts which, if committed repeatedly over a period of time, would be evidence of the species of vagrancy here charged, but which are of such doubtful import, because they might proceed from other causes than a lewd or dissolute character, that a single instance would afford no certain foundation for the inference that the actor is a person of such character. There are, however, other acts which are of such nature as reasonably to justify an inference that no one not of lewd or dissolute character would do such an act even once. If the evidence shows a single act of the kind last mentioned, the question as to the inference to be drawn therefrom is one for the trial court, and we cannot interfere with its decision."

But going a step further, it is our opinion that to charge appellant as being a vagrant under this particular subdivision of the statute was not merely to charge her with a state of being, but was rather to charge her with a course of conduct made up of continued and related acts. The charge in a particular

case must, of course, be substantiated by proof of such conduct, and the conviction must, of course, stand or fall according to the proof. In the case at bar, the charge was substantiated by ample proof of acts of a character, and continued for a sufficient length of time, to constitute a course of lewd and dissolute conduct.

Appellant further contends that the terms of the statute under which she was charged were not defined by the court, or, at least, were not defined in such a way as to give the jury a workable idea on which to proceed in the consideration of the evidence. The terms "lewd," "disorderly" and "dissolute" have no statutory definition. They are words, however, of common and general use and are easily understood by men and women of average intelligence. We doubt whether definition could make them any clearer. But to avoid any possibility that the jury might not comprehend them in their legal sense, and to furnish the jury with a test by which to measure the acts or conduct of the appellant, the court explicitly resolved them into language which the jurors could not fail to understand.

When the occasion arises, it becomes the province of the court to determine what constitutes, in law or under the statute, an offense, and of the jury to determine the facts with reference to the offense charged. So, in this case, if the words of the charge required any definition, that was the province of the court, and the court having defined them in language conveying their plain and well-known meaning, it was for the jury to say, as they did say, whether the acts and conduct of the appellant, under the evidence, fell within the offense as charged and defined.

The judgment is affirmed.

BEALS, C. J., MAIN, TOLMAN, and MITCHELL, JJ., concur.