[No. 38205. Department Two. February 10, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. NED E. LEVIN, *Appellant.*\*

*Reported in 410 P.2d 901.

*J. P. Tonkoff* (of *Tonkoff, Holst & Hanson*), for appellant.

*Arthur R. Eggers* and *Albert J. Golden*, for respondent.

LANGENBACH, J.†—At 11:30 on a Saturday evening, appellant was seated in the back seat of an automobile in anticipation of witnessing a drag race on a straight country road. Is this status sufficient to support a charge of vagrancy? That is the question.

While on routine patrol on February 6, 1965, a deputy sheriff noticed a group of cars; since earlier in the week he had heard that a drag race was to take place, his curiosity was aroused. Shortly, the cars left the Walla Walla area, traveling towards the small town of Clyde. While he followed, he radioed for assistance. Another deputy and a state trooper responded. When the cars stopped (18 to 20 miles later) on a straight stretch of county road, the officers blocked the road on each side of the cars. They then asked for identification and drivers' licenses. The appellant was in the back seat of an automobile owned by another. Forty-one persons, including minors, were taken to the station and arrested for vagrancy. A local ordinance sets the curfew for minors at midnight on weekends.

By stipulation, the appeals by appellant were to be representative of 24 others. Following a conviction of vagrancy in the justice court, he appealed to the superior court. In the superior court, he moved for dismissal at the close of the state's case. When it was denied, appellant testified.

He stated that he was 33 years old, a wheat and chicken farmer, and interested in constructing and racing cars. On the night of his arrest, he had heard that a drag race was

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

to be held and went in a car with several others to watch. The superior court sustained his conviction of vagrancy under (7) and (8) of RCW 9.87.010. He then perfected his appeal to this court.

Appellant argued that (1) reasonable men cannot differ that the evidence shows that no crime was committed under the vagrancy laws; and (2) assuming arguendo that (7) and (8) are applicable, appellant cannot be constitutionally convicted of idleness and failure to explain his presence to the satisfaction of police.

The sections under which appellant was convicted are:

RCW 9.87.010. Vagrancy. Every—

. . . .
(7) Lewd, disorderly or dissolute person; or,
(8) Person who wanders about the streets at late or unusual hours of the night without any visible or lawful business . . . .

. . . .
Is a vagrant . . . .

The issue narrows as to whether the state sustained its burden of proving that appellant was a vagrant under either of these two sections.

The trial court found that appellant was "disorderly for going out there for the purpose of being a spectator and being a person in this crowd where he had no legitimate business."

The state argued that the trial court properly concluded that appellant was a vagrant on authority of *State v. Grenz*, 26 Wn.2d 764, 175 P.2d 633 (1946). That case is not apposite as the evidence there showed that defendant had a criminal intent in being where he was at the time of his arrest, under the circumstances and conditions prevailing. (The defendant had been apprehended during an attempt to steal some chickens in the middle of the night.)

■ In the recent case of *State v. Finrow*, 66 Wn.2d 818, 820, 405 P.2d 600 (1965), this court defined "disorderly," within (7), as set forth in Black, Law Dictionary (4th ed.): "Contrary to the rules of good order and behavior; violative

of the public peace or good order; turbulent, riotous or *indecent*."

"Disorderly" is a state of being which may be proven by a single act that reflects the thema of (7); *i.e.*, "profligacy" or "depravity" in a person. *State v. Harlowe*, 174 Wash. 227, 24 P.2d 601 (1933). *Accord, State v. Finrow, supra.*

■ In the case at bar, no evidence of turbulent, riotous or indecent conduct was introduced. Even though appellant was riding in the back seat of an automobile in anticipation of watching an illegal drag race, he was hardly being profligate or otherwise "disorderly" within the vagrancy statute. Further, when the police accosted the appellant, along with everyone else, they were not committing any unlawful act. There was no testimony or proof of any conduct contrary to the rules of good order and behavior, or violative of the public peace or good order. The defendant was in a place where he had a lawful right to be. It would be a strange law indeed that condemned anyone who sits in an automobile as a vagrant. Even the minors were within the legal limits of the curfew. Even the remote county highway was not congested. There was no disorderly conduct.

The conviction is reversed and the prosecution dismissed. It is so ordered.

ROSELLINI, C. J., DONWORTH and WEAVER, JJ., concur.

FINLEY, J. (dissenting)—I believe the evidence is sufficient to support appellant's contention under sub-paragraph (8) of RCW 9.87.010.

Furthermore, the majority's negation of the applicability of (7) of RCW 9.87.010 seems to me to be unnecessarily restrictive and inappropriate. In *State v. Finrow*, 66 Wn.2d 818, 820, 405 P.2d 600 (1965), the term "disorderly," as used in (7) of RCW 9.87.010, was defined per Black, Law Dictionary (4th ed.) to mean: "*Disorderly.* Contrary to the rules of good order and behavior; violative of the public peace or good order; turbulent, riotous or *indecent*. (Italics ours.)" The majority opinion unduly emphasizes only the last phrase, "turbulent, riotous or indecent," and thereby

concludes that appellant's conduct as a prospective spectator at the impending drag race cannot be categorized as "turbulent, riotous or indecent." Thus, the majority sets up and knocks down a straw man, convincingly, but with what pertinent result? The emphasis upon this particular phrase conveniently overlooks the other language of the Black's Law Dictionary definition referred to by the court in *State v. Finrow, supra.* The other definitive language therein— namely, the words, "Contrary to the rules of good order and behavior; violative of the public peace or good order;"— seems to me to be pertinent and to encompass and to apply to appellant's deliberate conduct apropos of participating as a spectator in an unlawful "drag race" which was about to be staged or conducted on a public highway. There should certainly be no doubt that utilizing both lanes of a two-lane county highway for two cars to engage in high speed competition would be potentially quite dangerous to other motorists, inimical to good order and behavior, and violative of the public peace.

The essence of the majority's reasoning is found in the following sentence: "It would be a strange law indeed that condemned anyone who sits in an automobile as a vagrant." To me it is even "stranger law" to tacitly admit that conduct violative of the public peace is nevertheless not subject to sanction. The appellant herein was not a "happenstance" witness upon the scene. He voluntarily rode as a passenger some 18 miles in order to savor the thrill and excitement of, and to provide spectator support for, an unlawful race. Thus, he was not just "anyone who sits in an automobile."

The majority opinion too readily ignores the relationship between the race itself and the act of watching it. As a practical matter, the interest and participation of "drag racing" car drivers seem to me to be motivated and considerably enhanced by the presence of spectators and their reactions to a "drag race" event. Of course, impromptu challenges and "drag races" do occur upon our streets and highways, and perhaps with distressing frequency, usually involving overly brash or irresponsible "hot rod" enthusiasts. But without spectators, a "drag race" event, in terms

of its significance or attraction to the driver-participants, would be about as unlikely an occurrence as a Rose Bowl football game without spectators. In other words, the spectators and the anticipation and excitement created by their presence were integral parts of the alleged sporting event scheduled to take place on the evening of February 6, 1965 (upon the portion of the county public highway unlawfully and dangerously appropriated for the "purpose"), until the timely intervention or appearance on the scene of the sheriff and other minions of the law, including the Washington State Patrolman.

In *State v. Finrow, supra,* this court said:

The term "lewd and disorderly" does not have a statutory definition, but, as the court said in *State v. Harlowe,* 174 Wash. 227, 235, 24 P.2d 601 (1933):

They are words, however, of common and general use and are easily understood by men and women of average intelligence. (p. 806.)

I take issue with anyone who would contend that "spectatorship" in connection with a deliberately planned, unlawful, "drag race" upon a public highway unlawfully appropriated for this unlawful purpose is consistent with the rules of good order and behavior, and is nonviolative of the public peace and good order.

For the reasons indicated, I am convinced that the evidence and circumstances in the instant case were sufficient to support appellant's conviction under (7) and (8) of the vagrancy statute, and I think the judgment should be affirmed.

---

May 20, 1966. Petition for rehearing denied.