[No. 1179-1.    Division One—Panel 2.    May 21, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICIA ANN JONES, *Appellant*.

*James V. Grubb,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *Marco J. Magnano, Jr., Deputy,* for respondent.

SWANSON, J.—A jury found a Burien sauna parlor masseuse, Patricia Jones, guilty of the crime of vagrancy on the basis of being a "lewd, disorderly or dissolute person" in violation of RCW 9.87.010(7), which in pertinent part provides: "Every . . . (7) [l]ewd, disorderly or dissolute person . . . [i]s a vagrant . . ." She was sentenced to 1 year in the county jail. However, the sentence was deferred upon the condition that she serve 11 months in jail and pay a $500 fine, plus court costs.

From this judgment and sentence she appeals and contends (1) that the Washington vagrancy statute is unconstitutionally vague and therefore void; (2) that the evidence consisting of her admitted conduct of massaging a male customer's genital organs is insufficient to support her conviction because the conduct occurred between consenting adults in private; (3) that the court's instruction defining the offense was incorrect and prejudicial; and (4) that the court's sentence exceeded the maximum penalty permitted by the statute.

█ Appellant Jones' first assignment of error is directed to the trial court's failure to dismiss the case and is based on the argument that the section of the Washington vagrancy statute under which she was convicted, RCW 9.87.010(7), although upheld as constitutional in *State v. Harlowe*, 174 Wash. 227, 24 P.2d 601 (1933), should be held unconstitutional because it does not satisfy modern-day requirements that a criminal statute give notice of what type of conduct is prohibited. Appellant argues that the statute in question is so obscure that men of common intelligence must guess at its meaning. In order for appellant to advance successfully her void for vagueness argument in questioning the constitutionality of subdivision (7) of the Washington vagrancy statute, appellant must overcome

several formidable obstacles. At the outset, as stated in *Seattle v. Drew,* 70 Wn.2d 405, 423 P.2d 522, 25 A.L.R.3d 827 (1967), at 407:

We begin our analysis of the questions presented mindful of the fact that when the constitutionality of an ordinance is questioned, it will be presumed constitutional. If it is reasonably capable of a constitutional construction, it must be given that construction. [Citations omitted.]

It should also be recognized that application of the doctrine of void for vagueness depends upon the repugnancy of the challenged legislation to the due process clause of the fourteenth amendment to the United States Constitution and that the primary issue facing a court considering the doctrine is whether the provisions of the penal statute in question are sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and, at the same time, to inform judge and jury of standards for the determination of guilt. *Grayned v. Rockford,* 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294 (1972); *United States v. Petrillo,* 332 U.S. 1, 91 L. Ed. 1877, 67 St. Ct. 1538 (1947); *State v. Jacobsen,* 78 Wn.2d 491, 477 P.2d 1 (1970). As our state Supreme Court said in *Jacobsen* at page 498:

Criminal statutes need not spell out with absolute certainty every act or omission which is prohibited if the general terms of the act convey an understandable meaning to the average person.

Moreover, appellant's argument that modern-day constitutional standards demand that we strike down the Washington vagrancy statute is further answered by *State v. Maloney,* 78 Wn.2d 922, 481 P.2d 1 (1971), in which our state Supreme Court rejected similar constitutional arguments that the statute is vague and uncertain. In *Maloney* the court had before it an appeal from a conviction under the identical "lewd, disorderly or dissolute" provision of the vagrancy statute involved in the case at bar, and stated at page 924:

In *State v. Harlowe,* 174 Wash. 227, 24 P.2d 601 (1933),

we considered RCW 9.87.010(7), recognized the common and ordinary meaning of the terms employed and held that the provision was not vague and uncertain. Since that time, we have further considered and somewhat limited or narrowed the meaning of the word "disorderly" as used in the context of the provision. In these later decisions we have held that the word, in its context, connotes overt misconduct contrary to the rules of good order and behavior, which is violative of the public peace. *Seattle v. Franklin,* 191 Wash. 297, 70 P.2d 1049 (1937); *State v. Finrow,* 66 Wn.2d 818, 405 P.2d 600 (1965); *State v. Levin,* 67 Wn.2d 988, 410 P.2d 901 (1966). As so construed and applied we can perceive no fatal vagueness.

It is recognized, however, that the factual situation in *Maloney,* which involved the distribution of an "underground" newspaper on the premises of Spokane Community College and related primarily to the "disorderly" portion of subdivision (7) of the vagrancy statute, is substantially different from the case at bar. Nevertheless, the *Maloney* court did reexamine the holding in *State v. Harlowe,* in connection with the same constitutional arguments presented by appellant here, and chose to reaffirm the *Harlowe* holding. We would dispose of appellant's constitutional arguments by reference to *Maloney,* without further discussion; however, the United States Supreme Court, in *Papachristou v. Jacksonville,* 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972), struck down the entire Jacksonville city vagrancy ordinance as being void for vagueness. This decision makes mandatory a careful reexamination of appellant Jones' constitutional arguments.

The *Papachristou* case involved eight defendants who were convicted of violating a city vagrancy ordinance. Five cases were consolidated on appeal. All of the defendants were charged generally with vagrancy but each charge was based upon different aspects of the ordinance definition of "vagrant." Thus, in the first case, four persons were charged with vagrancy by "prowling by auto." In the second case, the defendants were charged with vagrancy by being "vagabonds." In the third case, the defendants were ar-

rested for "loitering" and being a "common thief." In the fourth case, the defendant was charged with being a "common thief." Finally, in the fifth case, the defendant was charged with vagrancy by "disorderly loitering on street" and "disorderly conduct—resisting arrest with violence." The Supreme Court said, through Justice Douglas, that the Florida vagrancy statute was

> void for vagueness, both in the sense that it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," [Citation omitted.] and because it encourages arbitrary and erratic arrests and convictions. [Citations omitted.]

*Papachristou,* 405 U.S. at 162. The court in *Papachristou* pointed out that the Jacksonville ordinance made criminal activities which by modern standards are normally innocent. In this connection, the court referred to portions of the ordinance which made "loafing," "nightwalking," "wandering or strolling" criminal conduct. This ordinance went too far, the court said, in vesting unfettered discretion in the police to determine what is criminal and what is not.

An examination of the Jacksonville vagrancy ordinance condemned in *Papachristou* indicates that it was of a catchall nature in that it described conduct or condition or status which is as likely to be innocent and innocuous as it is that it is criminal. A careful reading of *Papachristou* indicates that the court was concerned primarily with statutes which (1) make one a vagrant purely on the basis of his passive status or condition, such as poverty or absence of employment; (2) statutes which make one a vagrant for engaging in an activity often considered innocuous, such as loitering or wandering about; and (3) statutes which make one a vagrant on the basis of his reputation.

Such statutes differ from the Washington vagrancy statute here under consideration which makes one a vagrant for acts or conduct generally obnoxious to community standards, such as lewdness. Further, unlike the Jacksonville vagrancy ordinance, the Washington vagrancy statute is subdivided so as to permit a court to uphold

portions of the statute which might conform to constitutional standards on a section-by-section basis. In this connection, it is significant that the Washington vagrancy statute was amended by Laws of 1965, 1st Ex. Sess., ch. 112, § 2, which amendment states in effect that if one portion of the statute is held invalid, such holding does not make the whole statute invalid. In short, unlike the Jacksonville ordinance, our vagrancy statute is severable. We conclude that the *Papachristou* decision is clearly distinguishable from the case at bar, and hold that RCW 9.87.010(7) satisfies constitutional standards for precision and clarity.

In addition to the foregoing, a commonsense answer to appellant's argument of vagueness and uncertainty may be given by reference to the testimony of appellant Jones when the deputy prosecutor attempted to ascertain whether or not she considered the so-called "extended massage" unlawful:

Q Miss Jones, why did you ask Officer Burk to bring back some identification papers? A So I could find out where he really worked, what his real name was, a little bit about him. Q And what was the reason for that? A Because I don't like—I would like to get to know a customer before they receive any kind of treatment like that. Q Now do you recall the statement that Officer Burk testified that you made that, "If you're a cop, I'll hit you over the head"? Do you recall making that statement? A Yes. Q Why did you make that statement? [Objections omitted.] Q What was your reason for telling him that? A For saying that? Q Yes. A I said it in a very joking manner, which he laughed and I laughed. I didn't ask him if he were a policeman. Q Why was the statement made at all? Why did you refer to his being a cop or not? [Objection made.] THE COURT: I think I will sustain the objection. I think you have had the answer to your question. Q Miss Jones, do you also recall stating at the prior judicial proceeding that you would not knowingly do this to an officer because you might be arrested? A I had heard that they would arrest you, some of them might arrest you for that. Q So when you were giving Officer Burk the massage, were you thinking that you could be arrested if he were a policeman? A No, I really didn't think of it. Q You didn't worry about it at all? A

Not really. Q Now is this extended massage, is this a common part of the massage you give your customers? [Objections omitted.] A No.

This testimony indicates that appellant Jones recognized the impropriety of her conduct. The precautions she took, such as her request for suitable identification, and the fact that she acknowledged making the statement, "If you're a cop, I'll hit you over the head," lead only to the conclusion that, contrary to her claim of uncertainty, she knew that massaging a male customer's genital area was unlawful.

We turn now to appellant's second argument, namely, that the evidence presented at trial does not support her conviction because, she argues, the record indicates that the complained-of conduct consisted solely of a consensual act between adults of the opposite sex in private. Appellant cites *State v. Maloney, supra* at 924, which indicated that it has been held that the word "disorderly," as used in RCW 9.87.010(7), "connotes overt misconduct contrary to the rules of good order and behavior, which is violative of the public peace." In the case at bar, the trial court's instruction to the jury defined the term "disorderly" in accordance with the holding in *Maloney*, by stating that the term "embraces all persons who *openly* violate the peace and good order of society." Court's instruction No. 4, in part. (Italics ours.) However, appellant argues that just as conduct cannot be considered "disorderly" unless done openly, acts or conduct cannot be deemed "lewd" or "dissolute" unless they were performed openly. Appellant urges that the complained-of conduct in the instant case occurred in private and hence did not constitute "lewd, disorderly or dissolute" conduct.

The court's instruction No. 2, to which no error has been assigned, and which therefore becomes the law of the case, states that in order to convict, "the state must prove beyond a reasonable doubt . . . said defendant was a lewd *or* disorderly *or* dissolute person." (Italics ours.) We are not persuaded that *Maloney* should be extended to require that a person's conduct be open or overt before that

person may be held to be "lewd" or "dissolute." It is therefore apparent that the jury could have found the defendant to be a lewd person or a dissolute person even if her conduct did not involve open or overt acts. In any event, her conduct *was* open and overt because the Rama Royale Sauna was open to the public. Anyone could enter and ask for any of the massages offered. Merely because the appellant's actions took place behind a closed door in a business establishment open to the public does not make those acts any less public. They were only more difficult to observe.

Appellant Jones' third argument is directed to the trial court's instruction No. 4:

> You are instructed that the words lewd, disorderly and dissolute have the same meaning that they have in common and general use. However, they have been correctly defined as follows:
>
> The term "lewd person" is a lawless, bad, vicious, or unchaste person.
>
> A "dissolute person" is a person who is loose in morals and conduct.
>
> The term "disorderly" embraces all persons who openly violate the peace and good order of society.

A virtually identical instruction received approval in *State v. Harlowe, supra.* Nevertheless, appellant argues that the language used in instruction No. 4 to define the terms of the statute are more vague than the statute itself.

■ ■ Our Supreme Court has stated many times that commonly understood words require no definition. *State v. Lyskoski,* 47 Wn.2d 102, 287 P.2d 114 (1955). Here the court attempted to define the terms of the statute in an effort to assist the jury. Although instruction No. 4 falls short of what we would consider a model of precision and clarity, the definitions contained therein are not incorrect and could be of some assistance to the jury's understanding of the conduct proscribed by the statute itself. Further, it was not error to refuse appellant's requested instruction even though we might believe it is an improvement on instruction No. 4. A defendant is not entitled to an instruction on the law in the precise language he suggests, so long as the

instruction given permits him to argue fully his theory of the case and so long as it does not incorrectly state the law. Instruction No. 4 meets such minimum requirements and so must be upheld.

Appellant Jones' final argument that the trial court's sentence exceeded that permitted by the statute is well taken. The statute expressly provides for a maximum penalty of 6 months in jail or a $500 fine. The judgment is affirmed; however, the cause is remanded for reimposition of sentence.

FARRIS, J., concurs.

JAMES, J. (dissenting)—I dissent.

By this appeal we are asked to declare that RCW 9.87.010(7) is unconstitutionally vague and overbroad. A similar plea was rejected 30 years ago in *State v. Harlowe*, 174 Wash. 227, 24 P.2d 601 (1933). In 1971, the Washington Supreme Court again considered a vagueness and overbreadth challenge to the statute. Concerning the *Harlowe* decision the court said:

> In *State v. Harlowe*, 174 Wash. 227, 24 P.2d 601 (1933), we considered RCW 9.87.010(7), recognized the common and ordinary meaning of the terms employed and held that the provision was not vague and uncertain. Since that time, we have further considered and somewhat *limited or narrowed* the meaning of the word "disorderly" as used in the context of the provision. In these later decisions we have held that the word, in its context, connotes overt misconduct contrary to the rules of good order and behavior, which is violative of the public peace. *Seattle v. Franklin*, 191 Wash. 297, 70 P.2d 1049 (1937); *State v. Finrow*, 66 Wn.2d 818, 405 P.2d 600 (1965); *State v. Levin*, 67 Wn.2d 988, 410 P.2d 901 (1966). As so construed and applied we can perceive no fatal vagueness.

(Italics mine.) *State v. Maloney*, 78 Wn.2d 922, 924, 481 P.2d 1 (1971).

A review of the record convinced the court that there was no evidence that Maloney's conduct was "blatant, vociferous, or belligerent" (*State v. Maloney, supra* at 925)

and concluded that his behavior could not "fairly or properly be characterized as overt misconduct violative of the public peace within the contemplation of RCW 9.87.010(7)." *State v. Maloney, supra* at 926.

It is impossible for me to see how nonviolent, voluntary conduct between two adults, which the public at large is not free to witness because it occurs behind closed doors, can violate the public peace. Thus to affirm Ms. Jones' conviction of RCW 9.87.010(7), I would have to find the terms "lewd" and "dissolute" capable of withstanding her challenge of unconstitutional vagueness and overbreadth.

The fundamental principle which has impelled courts to declare criminal statutes to be void for vagueness or overbreadth is that "[a]ll are entitled to be informed as to what the State commands or forbids." (Footnote omitted.) *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 83 L. Ed. 888, 59 S. Ct. 618 (1939).

> To be consistent with due process, a penal statute or ordinance must contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at the meaning of the enactment. *Winters v. New York*, 333 U.S. 507, 92 L. Ed. 840, 68 Sup. Ct. 665 (1948). A law that fails to give fair notice of what acts will be punished is violative of due process. *Ibid.*

*Seattle v. Drew*, 70 Wn.2d 405, 408, 423 P.2d 522, 25 A.L.R.3d 827 (1967).

The questionable uses of vagrancy statutes are matters of well-known legal history. *Papachristou v. Jacksonville*, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972). Deliberate vagueness is their hallmark.

> These statutes are in a class by themselves, in view of the familiar abuses to which they are put. See Note, 47 Col. L. Rev. 613, 625. Definiteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution, although not chargeable with any particular offense.

*Winters v. New York*, 333 U.S. 507, 540, 92 L. Ed. 840, 68 S Ct. 665 (1948). (Frankfurter, J., dissenting.)

Maloney's offensive conduct was his persistence in selling a " 'so-called underground newspaper' " (*State v. Maloney, supra* at 924) on the campus of the Spokane Community College in defiance of express admonitions that he not do so. The prosecution, the judge and the jury believed that this made him a "disorderly" person. By carrying his challenge to the Supreme Court, Maloney was able eventually to establish the de facto impreciseness of the word "disorderly," but, though acknowledging the statute's overbreadth, the court chose only to reverse his conviction under RCW 9.87.010(7), for the reason that the evidence did not establish "overt misconduct violative of the public peace."[1] *State v. Maloney, supra* at 926.

If the word "disorderly" required judicial "limiting or narrowing" to achieve constitutionally required definiteness, how much more in need of judicial surgery are the words "lewd" and "dissolute"! Further, to be "disorderly," one must be guilty of "overt *misconduct*," necessarily an *act*; while the terms "lewd" and "dissolute" describe one's character or *status* without reference to any act.

I do not suggest that the legislature may not properly determine that Ms. Jones' commercial *activity* should be criminally proscribed, even though performed in private with a consenting adult. For example, RCW 9.79.120[2] makes several lewd *acts* criminal. But I believe that we should forthrightly declare that the crime of vagrancy cannot constitutionally be defined in the broad and imprecise wording of RCW 9.87.010(7). Criminal laws must be directed toward action, not status. *Robinson v. California,* 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962); *accord, Hughes v. Rizzo,* 282 F. Supp. 881 (E.D. Pa. 1968).

Quite probably, one addicted to drugs poses a much

---

[1]Maloney's conviction under RCW 9.87.010(13) was, however, affirmed.

[2]"Every person who shall lewdly and viciously cohabit with another not the husband or wife of such person, and every person who shall be guilty of open or gross lewdness, or make any open and indecent or obscene exposure of his person, or of the person of another, shall be guilty of a gross misdemeanor."

greater threat to society than a "lewd or dissolute person." Certainly the status of "being addicted to the use of narcotics" is a more precise definition than the status of being a "lewd or dissolute person." But in *Robinson v. California, supra,* the United States Supreme Court struck down a California statute which made it a misdemeanor to "be addicted to the use of narcotics." The court pointed out that the state's broad powers to control drugs should be used to punish "a person for the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration" (*Robinson v. California, supra* at 666) rather than to punish for the " 'status' of narcotic addiction."

The majority reasons that, in any event, Ms. Jones was not misled because of any statutory vagueness or overbreadth. She testified that she would not perform an "extended" massage if she knew that her customer was a police officer. But such reasoning is inapposite to the issue of constitutional vagueness and overbreadth. Ms. Jones may well have had good reason to suspect that current police policy considered the giving of an "extended" massage to evidence a lewd and dissolute character. But she would be extremely naive not to know that police policy with reference to the enforcement of moral standards is subject to change.

> *It is the statute, not the accusation under it,* that prescribes the rule to govern conduct and warns against transgression. See *Stromberg* v. *California,* 283 U. S. 359, 368; *Lovell* v. *Griffin,* 303 U. S. 444. No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.

(Italics mine.) *Lanzetta v. New Jersey, supra* at 453.

The meanings of the terms "lewd" and "dissolute" are uncertain in and of themselves without resort to current moral standards. But the impossibility of "applying contemporary community standards" to moral issues has been demonstrated by the flood of obscenity cases spawned by *Roth v. United States,* 354 U.S. 476, 489, 1 L. Ed. 2d 1498, 77

S. Ct. 1304 (1957); *State v. Cox*, 3 Wn. App. 700, 477 P.2d 198 (1970). The constitution requires that a criminal statute be sufficiently definite to give reasonable notice of the prohibited conduct to those who would avoid its penalties and to apprise judge and jury of standards for the determination of guilt. *Lanzetta v. New Jersey, supra.*

A criminal statute is unconstitutionally vague when it leaves the standard of guilt to the variant views of the different courts and juries which may be called upon to enforce it.

*State v. Spence*, 81 Wn.2d 788, 795, 506 P.2d 293 (1973).

The words "lewd" and "dissolute" mean different things to different people. Their use neither gives reasonable notice of prohibited conduct nor affords judge or jury reasonable standards for judging guilt or innocence.

I would declare that RCW 9.87.010(7) is unconstitutionally vague and overbroad.