[No. 1913–2. Division Two. June 13, 1977.]

THE CORRAL, INC., *Appellant,* v. WASHINGTON STATE
LIQUOR CONTROL BOARD, *Respondent.*

*Landon R. Estep* and *Lundin, Estep, Sindell & Haley,* for appellant.

*Slade Gorton, Attorney General,* and *John Hennen, Assistant,* for respondent.

PETRIE, C.J.—The appellant herein, The Corral, Inc., is a Washington corporation, holder of a Class H Liquor License issued by the respondent herein, Washington State Liquor Control Board, and operates a restaurant and cocktail lounge in Yakima, Washington. In 1974, the Board cited the Corral for eight violations of board rules.

The hearing examiner before whom the administrative proceedings were conducted found sufficient evidence to sustain seven of the charges. The examiner's findings were adopted by the Board, and, upon review to the Superior Court, they were again affirmed. On May 29, 1975, the court entered judgment directing the Board to impose a penalty upon the Corral not to exceed suspension of its license for 30 days or, alternatively, to impose a monetary penalty equal to the gross profit from the operation of the business for 30 days. The Corral now appeals to this court. We affirm.

For purposes of this opinion, we concern ourselves with only three of the board's citations: charges that on May 14, 22, and 29, 1974, the "licensees permitted disorderly persons to be on the premises," in violation of WAC 314–16–120 (known historically as board rule 27–1).

Rule 27–1 provides as follows:

(1) No licensee shall be disorderly, boisterous or intoxicated on the licensed premises, or on any public premises adjacent thereto which are under his control, *nor shall he permit any disorderly,* boisterous or intoxicated *person to be thereon;* nor shall he use or allow the use of profane or vulgar language thereon.

(Italics ours.)

Among the findings which were subsequently affirmed by the court, only one of which the Corral now challenges, are the following:

4.

That on May 14, 1974, Washington State Liquor Control Board Enforcement Officers Gilbert and Given entered the premises at approximately 8:30 p.m. and remained for approximately five hours; that they observed approximately ten (10) go–go dancers performing at customers' tables; that they observed one dancer brushing her buttocks and legs on the customer's legs; that they observed another go–go dancer brushing her breasts in the customer's face.

5.

That on May 22, 1974, Washington State Liquor Control Board Enforcement Officers Gilbert and Given entered the premises at approximately 9:30 p.m. and remained for approximately three hours; that they observed a go–go dancer performing three times at a customer's table and pushing her breasts in the customer's face and lowering the bottom portion of her bikini costume.

6.

That on May 29, 1974, Washington State Liquor Control Board Enforcement Officer Martin entered the premises at approximately 10:40 p.m. and observed three go–go dancers performing at customers' tables; that he observed one dancer brush her buttocks against the customer.

The Corral challenges the finding pertaining to the alleged May 22 incident, but one of the Board's agents described the body contact in the following manner:

Q What was the nature of the contact?
A The girl would start dancing, and as I recall, her top would come off and she had her arms wrapped around his neck, and he had his head and face pushed up against her breasts, and they together pulled down her bikini bottoms and he just sort of worked his way on down.
Q He was touching her with his mouth?
A That's what it looked like to me.
Q I understand the bottom of her bikini would be removed too at this time?
A They were down around her knees.
Q Did that keep on going, what, the length of a record again?
A The length of a record each time.

Indeed, the Corral's majority stockholder, husband of the board–authorized manager, was on the premises on May 22 in his capacity of checking identification and doing "a little bit of everything." He testified that the Corral permits women who are on the premises, even though they are not employees or performing amateurs, to get up and dance so long as they do not display their pubic area or nipples on their breasts. He stated:

This girl did get up and dance once or twice—I don't know for sure—and then she sat down at the table and they were just talking and carrying on, and all of a sudden the girl rips all of her clothes off and runs across the place and runs out in front, naked.

■ Upon review of the record, we are not left with a definite and firm conviction that a mistake has been committed. Accordingly, there is no error in the challenged finding of fact. *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969). The unchallenged findings as to the alleged incidents of May 14 and 29 must, of course, be accepted as verities.

The Corral contends, however, that the described conduct does not violate board rule 27–1. The Board does not contend that the licensee permitted a boisterous or intoxicated person on the premises, only one who was "disorderly." The licensee asserts that the three findings

demonstrate only three instances of two adults touching each other with the other's consent; that conduct in the Corral continued in a normal, nonriotous fashion before, during, and after the three incidents of consented touching; and that the conduct caused no disruption or disturbance, was not riotous or otherwise illegal and, therefore, not disorderly.

The thrust of the Corral's assertion, as we understand it, is (1) that the term "disorderly" as used in rule 27-1 must be something akin to "boisterous or intoxicated"; and (2) that the term is so vague that a reasonable person cannot know in advance what actions are proscribed.

In a slightly different setting, an instruction, which defined "disorderly" as embracing all persons who violate the peace and good order of society, was approved. *State v. Harlowe,* 174 Wash. 227, 24 P.2d 601 (1933). *See also State v. Jones,* 9 Wn. App. 1, 511 P.2d 74 (1973). Further, in *State v. Levin,* 67 Wn.2d 988, 410 P.2d 901 (1966) the court seized upon other language adverted to in *Harlowe,* and described "disorderly" as reflecting a theme of "profligacy" or "depravity." Again, in *State v. Finrow,* 66 Wn.2d 818, 405 P.2d 600 (1965) a definition of the term "disorderly" which included the concepts of "turbulent, riotous or *indecent*" was specifically approved. Finally, in an attempt to synthesize expressions used in prior opinions into a meaningful whole, it was authoritatively determined that the term "disorderly" connotes "overt misconduct contrary to the rules of good order and behavior, which is violative of the public peace." *State v. Maloney,* 78 Wn.2d 922, 925, 481 P.2d 1 (1971).

Under any of the foregoing definitions of the term, activities included within the hearing examiner's findings constitute "disorderly" conduct. Furthermore, the appellate courts of this jurisdiction have often held that the term "disorderly", as judicially defined, is not so vague that reasonable persons cannot determine what is proscribed. *State v. Harlowe, supra; State v. Jones, supra.*

 Finally, the Corral contends that the Board exceeded its authority in adopting rule 27–1. Here, the challenge is (1) that RCW Title 66, taken as a whole, does not, even in general terms, authorize the Board to regulate the subject matter of rule 27–1; (2) that, contrariwise, in specific terms, legislation has restricted the Board's rule-making authority to areas other than those pertaining to the conduct of entertainers and patrons at licensed premises; and, indeed, (3) that the legislative authority to regulate conduct embraced within rule 27–1 has been specifically delegated to local authorities. We disagree.

We consider these issues in the reverse order of their presentation.

The Corral directs our attention to two statutes, RCW 66.28.080 and RCW 66.08.120,[1] in support of its contention that local authorities, and not the Board, have been delegated authority to regulate personal conduct within licensed premises. We recognize, as did the court in *Seattle v. Hinkley,* 83 Wn.2d 205, 517 P.2d 592 (1973) that the valid power of the state to promulgate liquor regulations has been extended to local authorities to the extent specified by both these statutes.

---

[1]RCW 66.28.080 provides:

"It shall be unlawful for any person, firm or corporation holding any retailer's license to permit or allow upon the premises licensed any music, dancing, or entertainment whatsoever, unless and until permission thereto is specifically granted by appropriate license or permit of the proper authorities of the city or town in which such licensed premises are situated, or the board of county commissioners, if the same be situated outside an incorporated city or town: *Provided,* That the words "music and entertainment," as herein used, shall not apply to radios or mechanical musical devices."

RCW 66.08.120 provides:

"No municipality or county shall have power to license the sale of, or impose an excise tax upon, liquor as defined in this title, or to license the sale or distribution thereof in any manner; and any power now conferred by law on any municipality or county to license premises which may be licensed under this section, or to impose an excise tax upon liquor, or to license the sale and distribution thereof, as defined in this title, shall be suspended and shall be of no further effect: *Provided,* That municipalities and counties shall have power to adopt police ordinances and regulations not in conflict with this title or with the regulations made by the board."

RCW 66.08.120, however, merely extends to municipalities and counties the power to adopt police ordinances and regulations "*not in conflict*" with Title 66 or "*with the regulations made by the board.*" (Italics ours.) Indeed, the entire thrust of the statute is to declare the state's presumptive control over all facets of liquor traffic, to suspend any power previously conferred upon local authorities to license, regulate, or tax that traffic, but nevertheless to grant limited police power to municipalities and counties over that traffic, exercisable only when it is not in conflict with statutes enacted by the legislature as augmented by validly promulgated regulations of the Board.

RCW 66.28.080, on the other hand, is not a grant of any power; it merely declares unlawful any retail licensee's allowance of music, dancing, or entertainment on the licensed premises without first having obtained a permit therefor from proper local authorities. The police power exercised by the local authorities prescribing prerequisites to issuance of that permit must, nevertheless, be exercised within the narrow confines of the power circumscribed by RCW 66.08.120.

Neither of these two statutes derogates from the Board's primary authority to promulgate rules and regulations as authorized by RCW 66.08.030. Subsection (1) of that statute provides:

(1) For the purpose of carrying into effect the provisions of this title according to their true intent or of supplying any deficiency therein, *the board may make such regulations not inconsistent with the spirit of this title as are deemed necessary or advisable.* All regulations so made shall be a public record and filed in the office of the code reviser, together with a copy of this title, shall forthwith be published in pamphlets, which pamphlets shall be distributed free at all liquor stores and as otherwise directed by the board, and thereupon shall have the same force and effect as if incorporated in this title.

(Italics ours.) Subsection (2) of that statute specifies 26 areas of activity to which the Board's rule–making authority extends, "[w]ithout thereby limiting the generality of

the provisions contained in subsection (1), . . ." The Board does not rely upon any of the 26 areas of activity specified in subsection (2) for its authority to promulgate rule 27–1. Rather, it relies solely upon the admittedly broad language in subsection (1) which was incorporated in the original Washington State Liquor Act enacted in the 1933 Extraordinary Session of the Legislature. Laws of 1933, 1st Ex. Sess., ch. 62, § 79. In its substantive content, subsection (1) has not been amended in the 43 years since it became operative in 1934.

■ This broad rule–making authority granted by the legislature was tested in the courts shortly after its enactment. In *State ex rel. Thornbury v. Gregory,* 191 Wash. 70, 74, 70 P.2d 788 (1937) the court described the magnitude of the administrative control problem as follows:

> The regulation and control of the liquor traffic is manifestly a problem of the greatest difficulty and importance, involving an immense amount of detail and including many matters which, if successful operation and control is to be established and maintained, must be left to some regulatory body other than the state legislature.

In the same case, the court quoted with approval the expressions of Mr. Justice Field, speaking for the United States Supreme Court in *Crowley v. Christensen,* 137 U.S. 86, 91, 34 L. Ed. 620, 11 S. Ct. 13 (1890) as follows:

> As it is a business attendant with danger to the community it may, as already said, be entirely prohibited, or be permitted under such conditions as will limit to the utmost its evils.

The legislature has recognized the necessity to grant to an administrative body very broad regulatory authority in a business clearly attendant with danger to the community. We cannot say, given the nature of the traffic to be controlled, that the broad authority delegated is constitutionally invalid.

These three violations are sufficient to support the 30-day license suspension imposed by the trial court; we need not explore the validity of the other alleged violations.

Judgment affirmed.

PEARSON and REED, JJ., concur.